[8 NE3d 831, 985 NYS2d 456]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE-FINA JIMENEZ, Appellant.

Argued January 15, 2014; decided February 25, 2014

## POINTS OF COUNSEL

*Steven Banks, The Legal Aid Society,* New York City (*Richard Joselson* of counsel), for appellant. I. The People failed to meet their burden of establishing the exigency required to justify the warrantless search of appellant's pocketbook as incident to her arrest because the police had arrested appellant for a nonviolent offense; she offered no resistance to the execution of the arrest procedures; no police officers testified that they feared for their safety or believed that the pocketbook contained a weapon or evidence to which appellant could gain access; and, by the time of the search—the time relevant to assessing the propriety of the police conduct—appellant had been frisked and handcuffed and the pocketbook was in the exclusive control of the officers. (*People v Gokey,* 60 NY2d 309; *Arizona v Gant,* 556 US 332; *People v Hodge,* 44 NY2d 553; *Katz v United States,* 389 US 347; *People v Calhoun,* 49 NY2d 398; *People v Smith,* 59 NY2d 454; *People v Johnson,* 86 AD2d 165, 59 NY2d 1014; *People v Bowden,* 18 NY3d 980; *People v Burgos,* 81 AD3d 558; *People v Estrella,* 288 AD2d 133.) II. In a case where the defense argued that appellant was not in knowing possession of the firearm, the court erroneously denied defense challenges for cause to two prospective jurors, who stated that they would not credit, without additional witnesses providing corroboration, an accused who testified that she lacked the requisite knowledge for

a finding of guilt, and who never unequivocally repudiated this position after instructions from the court. (*People v Arnold*, 96 NY2d 358; *People v Johnson*, 94 NY2d 600; *People v Borges*, 90 AD3d 1067; *People v Rose*, 73 AD3d 1091; *People v Ortiz*, 37 AD3d 361; *People v Harris*, 19 NY3d 679; *People v Smith*, 297 AD2d 495; *People v Russell*, 16 AD3d 776; *People v Kenner*, 8 AD3d 296.)

*Robert T. Johnson, District Attorney*, Bronx (*Noah J. Chamoy, Joseph N. Ferdenzi* and *Nancy D. Killian* of counsel), for respondent. I. The nisi prius court providently found the search of defendant's purse, incident to her arrest, lawful. (*Arizona v Gant*, 556 US 332; *People v Gokey*, 60 NY2d 309; *People v Greenidge*, 91 NY2d 967; *People v Davis*, 64 NY2d 1143; *People v Bowden*, 87 AD3d 402, 18 NY3d 980; *People v Cloud*, 79 NY2d 786; *People v Wheeler*, 2 NY3d 370; *People v Harrison*, 57 NY2d 470; *People v McRay*, 51 NY2d 594; *People v Batista*, 88 NY2d 650.) II. The trial court did not abuse its discretion as a matter of law in denying defendant's for-cause challenges of prospective jurors. (*People v Roberson*, 249 AD2d 148; *People v Johnson*, 94 NY2d 600; *People v Torpey*, 63 NY2d 361; *People v Arnold*, 96 NY2d 358; *People v Williams*, 63 NY2d 882; *People v Guzman*, 76 NY2d 1; *People v Chambers*, 97 NY2d 417; *People v Bludson*, 97 NY2d 644; *People v Blyden*, 55 NY2d 73; *People v Marrero*, 69 NY2d 382.)

### OPINION OF THE COURT

Chief Judge LIPPMAN.

The protections embodied in article I, § 12 of the New York State Constitution serve to shield citizens from warrantless intrusions on their privacy interests, including their personal effects. In the context of warrantless searches of closed containers incident to arrest, the People bear the burden of demonstrating the presence of exigent circumstances in order to invoke this exception to the warrant requirement. Because the People failed to meet that burden in this case as a matter of law, defendant's motion to suppress should have been granted. We therefore reverse the Appellate Division order to remedy this error.

Defendant was indicted for criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and criminal trespass in the first degree (Penal Law § 140.17 [1]) after the search of her purse incident to an arrest for trespassing resulted in the discovery of a loaded handgun. Defendant moved to suppress the gun and a hearing was granted. At the hearing, the

court heard testimony from Sergeant Manzari and Officer Barnes, two of the police officers present at the time of defendant's arrest.[1]

Just before noon on May 23, 2008, police responded to a radio run reporting a burglary in progress at 2255 Barker Avenue in the Bronx, an apartment building participating in Operation Clean Halls, a program through which police officers are authorized entry into privately owned buildings to conduct patrols. The radio run included descriptions of the suspects provided by the 911 caller, who had reported that two Latino males, between 5 feet, 9 inches and 5 feet, 11 inches, were attempting to burglarize a fifth-floor apartment. Sergeant Manzari and his partner, Officer Aldas, were the first to arrive on the scene. They began by checking the rear exterior of the building, which was boarded up due to ongoing construction, leaving no rear access. Manzari and Aldas then circled back to the front entrance, where they were soon joined by between four and six additional officers. Manzari sent a pair of officers upstairs to conduct a vertical sweep and to locate and interview the 911 caller.

Upon entering the building, Manzari and Aldas observed defendant coming into the lobby from what appeared to be a stairwell. She was in the company of a Latino male, Alberto Sanchez. Another woman, who was later identified as the building superintendent, pointed at defendant and Sanchez and "made a face" in a manner Manzari interpreted as a request for the police to stop them, though she gave no intimation of weaponry. Manzari also instructed an officer to move the superintendent aside "for safety reasons." At Manzari's direction, Officer Aldas then questioned defendant "to find out what she was doing in the building, if she was trespassing in the building." Her answers were contradictory and equivocal: while she initially stated that she was there to visit a friend, she then claimed she was in search of a notary, but could provide neither names nor apartment numbers associated therewith. There were "No Trespassing" signs posted in the lobby.

At this point, Sergeant Manzari instructed two of the officers present to arrest defendant and Sanchez for trespassing. Officer

---

1. We do not consider the conflicting evidence, in some respects more favorable to defendant, adduced at trial, as we conclude that suppression should have been granted following the pretrial hearing. Accordingly, we need not reach the issue of whether defendant's motion to reopen the suppression hearing was improperly denied. The facts recited here are thus drawn from the hearing testimony alone.

Pagan approached defendant while another officer prepared to arrest Sanchez. Pagan proceeded to remove from defendant's shoulder a large purse, which—from Officer Barnes' standpoint—appeared to be heavy. Pagan then opened the bag and saw a handgun inside. After Pagan informed Manzari that the bag contained a gun and that it appeared to be loaded, the Sergeant instructed her to secure the weapon. Thereafter, Pagan handcuffed defendant and transported her to the precinct for processing.

The trial court denied defendant's motion to suppress the gun, ruling that the search of defendant's purse was justified for safety reasons. The court determined that the purse was not within the police's exclusive control at the time of the search and that the superintendent's gestures suggested that defendant and Sanchez were in some way connected to the burglary. Defendant was convicted, after a jury trial, of the counts charged.

The Appellate Division affirmed (98 AD3d 886 [1st Dept 2012]), concluding, in relevant part, that the search was proper given that "[t]he bag was large enough to contain a weapon and was within defendant's grabbable area at the time of her arrest for criminal trespass in connection with the police investigation of a burglary" (*id.* at 886). The court further determined that the police lacked exclusive control over the bag and that the "surrounding circumstances . . . support a reasonable belief in the existence of an exigency justifying a search of the bag, even though the officers did not explicitly testify at the suppression hearing that they feared for their safety" (*id.*). A Judge of this Court granted leave to appeal (20 NY3d 987 [2012]), and we now reverse.

"All warrantless searches presumptively are unreasonable per se," and, thus, "[w]here a warrant has not been obtained, it is the People who have the burden of overcoming" this presumption of unreasonableness (*People v Hodge*, 44 NY2d 553, 557 [1978]; *see also People v Calhoun*, 49 NY2d 398, 402 [1980]; *Chimel v California*, 395 US 752, 762 [1969]). Under the State Constitution, to justify a warrantless search incident to arrest, the People must satisfy two separate requirements. The first imposes spatial and temporal limitations to ensure that the search is "not significantly divorced in time or place from the arrest" (*People v Smith*, 59 NY2d 454, 458 [1983] [quotation marks omitted]; *see also People v Gokey*, 60 NY2d 309, 312 [1983]; *People v Langen*, 60 NY2d 170, 181 [1983]).

The second, and equally important, predicate requires the People to demonstrate the presence of exigent circumstances (*Gokey*, 60 NY2d at 313; *Smith*, 59 NY2d at 458; *see also Langen*, 60 NY2d at 181). We have recognized two interests underlying the exigency requirement: "the safety of the public and the arresting officer; and the protection of evidence from destruction or concealment" (*Gokey*, 60 NY2d at 312). Exigency must be affirmatively demonstrated. Accordingly, even a bag "within the immediate control or 'grabbable area' of a suspect at the time of his arrest may not be subjected to a warrantless search incident to the arrest, unless the circumstances leading to the arrest support a reasonable belief that the suspect may gain possession of a weapon or be able to destroy evidence located in the bag" (*Gokey*, 60 NY2d at 311; *see also Smith*, 59 NY2d at 458-459).

The crime for which there is probable cause to make the arrest may itself provide the requisite exigency (*see e.g. People v Johnson*, 86 AD2d 165 [1st Dept 1982], *affd for reasons stated below* 59 NY2d 1014 [1983]). In *Johnson*, police were responding to a radio run reporting a "man with a gun" (*Johnson*, 86 AD2d at 166). The building superintendent informed them that the suspect had struck him in the head with a pistol, tried to shoot him, and retreated to an apartment. Upon entering that apartment, the police discovered the defendant standing two feet away from a bed on which lay a bag that he identified as his own. We held the search to be valid because the bag was within defendant's grabbable area at the time of the arrest and the police reasonably believed that he was armed.

Exigency may also derive from circumstances other than the nature of the offense. In *Smith*, for example, the defendant was arrested for the nonviolent offense of turnstile jumping, but we held that the warrantless search of his briefcase was reasonable because he wore a bulletproof vest and denied this fact when questioned by police (*see Smith*, 59 NY2d at 459).

However, we reached the opposite result in *Gokey*, where no exigency existed to justify the search of defendant's duffel bag. Defendant there was arrested for two nonviolent crimes and no less than five officers were on the scene. In addition, the People conceded that the police did not fear for their safety, but merely searched the bag because they suspected it contained drugs.

Likewise, the gun here should have been suppressed because the People failed to meet their burden as to the exigency requirement. Neither Sergeant Manzari nor Officer Barnes testified

that he feared for his safety or for the integrity of any destructible evidence. While an officer need not affirmatively testify as to safety concerns to establish exigency, such apprehension must be objectively reasonable (*see People v Batista*, 88 NY2d 650, 654 [1996]; *People v Moore*, 32 NY2d 67, 72 [1973], *cert denied* 414 US 1011 [1973]).

That was not the case here. The detention and arrest occurred with at least four armed officers present, and possibly as many as eight. Moreover, there was no indication that the demeanor or actions of either defendant or Sanchez lent them a threatening appearance in any respect. The testimony demonstrated that defendant was cooperative and offered no resistance to the removal of the purse from her shoulder, the ensuing frisk, or the placing of handcuffs. Furthermore, the unremarkable fact that a woman's purse appeared heavy is insufficient, on its own, to support a reasonable belief that it contains either a weapon or destructible evidence. Nor did the superintendent's gestures and facial expressions exhorting the police to stop defendant and her companion supply the requisite exigency. Unlike the witness in *Johnson* who made a statement to police accusing defendant of attacking him with a gun, the superintendent's signals bore no indicia that defendant or her cohort were armed or otherwise dangerous. Further, that Manzari thought it prudent to separate her from defendant and Sanchez during investigatory questioning is insufficient to establish a particularized suspicion that defendant or Sanchez had a weapon. To the extent the hearing court's findings were to the contrary, they are unsupported by the record.

Critically, that the arrest occurred when police were responding to a radio run for a burglary does not translate to exigency under these circumstances.[2] There was simply nothing connecting defendant or her companion to the burglary. Besides a common ethnicity, there was no evidence that they matched the

---

**2.** The People's reliance on *People v Mack* (26 NY2d 311 [1970]) to justify the search here is unpersuasive. *Mack* concerned the propriety of the stop-and-frisk of a suspect upon reasonable suspicion that he had committed a burglary, concluding that it was "unnecessary to particularize an independent source for the belief of danger" to justify the frisk (*Mack*, 26 NY2d at 317). Even assuming the same rationale applies in the context of a search incident to arrest, the case is nevertheless inapposite. In *Mack*, the police had developed a particularized suspicion as to that individual in connection with a burglary, whereas here the police lacked a reasonable basis to suspect defendant of anything more than trespass. Accordingly, an "independent source for the belief of danger" was both necessary and absent.

radio run description of the burglary suspects. Furthermore, defendant was arrested for trespass, without any reasonable basis to suspect that she participated in the alleged burglary.

In sum, the People's proof failed to demonstrate that the circumstances of defendant's arrest gave rise to a reasonable belief that her purse contained either a weapon or destructible evidence. Our constitutional privacy protections demand a more robust evidentiary showing to invoke this exception to the warrant requirement. Absent the requisite exigency, the warrantless search of defendant's purse incident to that arrest was improper and the gun discovered should have been suppressed.

In light of our holding, defendant's conviction for weapons possession cannot stand and her conviction for first-degree criminal trespass, premised on possession of a deadly weapon, must be reduced to criminal trespass in the second degree (Penal Law § 140.15 [1]).

We have considered and rejected defendant's remaining argument regarding jury selection.

Accordingly, the order of the Appellate Division should be reversed, defendant's motion to suppress granted, the conviction of criminal possession of a weapon in the second degree vacated and that count of the indictment dismissed, the conviction of criminal trespass in the first degree reduced to criminal trespass in the second degree and the matter remitted to Supreme Court for resentencing.

ABDUS-SALAAM, J. (dissenting in part). Whether the police acted reasonably in conducting the warrantless search of defendant's handbag involves "mixed questions of law and fact" (*People v Greenidge*, 91 NY2d 967, 969 [1998]) and our review is therefore "limited to whether there is record support for the determinations of the courts below" (*People v Wheeler*, 2 NY3d 370, 373 [2004]). Contrary to the majority, I conclude that there is record support for the unanimous findings of the lower courts that the search here was reasonable under all of the circumstances. Accordingly, I would affirm the conviction.

To summarize, the police were responding to a dispatch of a burglary in progress on the fifth floor of a residential building. As they entered the lobby, they saw defendant and her male companion exiting a stairwell into the lobby. The building superintendent made a face and gestured to the police, pointing out these two individuals. When the police questioned defendant as to what she was doing in the building, defendant first

claimed that she was visiting a friend, but could not name the friend. Defendant then changed her story, saying that she was in search of a notary, but could not name the notary or give an apartment number for the notary. The police, who were beginning the process of investigating the burglary on the fifth floor, decided to arrest defendant for trespass. While handcuffing defendant, the police noticed that defendant had a handbag on her shoulder that was weighted down, and which defendant was holding tightly to her body. The police opened the handbag and found a loaded handgun.

The hearing court denied defendant's motion to suppress the firearm, finding that the officers suspected that defendant and her companion were connected in some way to the burglary, and that defendant's handbag, which was in her immediate control and "grabbable space," presented a safety issue for the arresting officer. The Appellate Division affirmed, concluding that "[t]he surrounding circumstances here support a reasonable belief in the existence of an exigency justifying a search of the bag" (98 AD3d 886, 886 [1st Dept 2012]).

The reasonableness of each search incident to arrest must "be determined on the basis of the facts and circumstances of the particular case" (*People v Smith*, 59 NY2d 454, 457 [1983]). A warrantless search is justified by exigent circumstances such as the safety of the arresting officer (*People v Gokey*, 60 NY2d 309, 312 [1983]). In concluding that the weapon should have been suppressed, the majority has, in my view, merely differed with the lower courts as to the reasonable inferences that may be drawn based upon these facts, reached its own arguably reasonable inferences, and concluded that there was no exigency justifying the search. However, mixed questions are beyond our review even "where reasonable minds may differ as to the inference to be drawn" (*People v Harrison*, 57 NY2d 470, 477 [1982] [internal quotation marks omitted]; *see also People v Howard*, 22 NY3d 388 [2013]). Such a case is now before us.

This is not an instance where, "even accepting the entirety of the hearing court's factual findings, none of the inferences that reasonably may be drawn from [the] settled facts can support the conclusion that [the search] was lawful" (*Howard* at 411 [Abdus-Salaam, J., dissenting]). Rather, the facts *do* support the inferences reached by the lower courts, although other inferences could also be reached, as demonstrated by the conclusions drawn by the majority. For example, the majority notes that the police need not affirmatively testify that they were concerned

about their safety, but that the apprehension of the police must be objectively reasonable (*see* majority op at 723). In concluding that there was "nothing connecting defendant or her companion to the burglary" (*id.* at 723), the majority downplays the uncontroverted testimony that when the police officers first entered the lobby, they were directed to defendant by the gestures of the superintendent, who motioned to the police to stop defendant and her companion.

At the point that the police questioned defendant and decided to arrest her based upon her evasive and untruthful answers, they had not even made it up to the fifth floor to complete their investigation of the reported burglary and thus had no probable cause to arrest her for burglary. But they did have reason, by virtue of the superintendent's actions, to suspect defendant, and defendant only heightened their suspicions by her unsatisfactory answers to their questions. Furthermore, as the police were arresting defendant, they noticed that she was clutching a heavy handbag tightly against her body. Reasonable minds could infer that the police suspected defendant of being involved in the burglary and that her heavy handbag, held tightly against her body, gave rise to an objective apprehension that defendant might have a weapon that presented a safety risk to the officers (*see generally Brigham City v Stuart*, 547 US 398, 403 [2006], quoting *Mincey v Arizona*, 437 US 385, 393-394 [1978] ["(W)arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment"]).

Here, as in *People v Smith* (59 NY2d 454 [1983]), the crime for which defendant was being arrested was not suggestive of a weapon, but the police had reason to suspect defendant of a crime that could indeed involve a weapon (*see* Penal Law § 140.30 [burglary in the first degree]), and defendant was holding a bag that "[was] readily accessible to [her] and . . . was of sufficient size to contain a weapon" (59 NY2d at 459). Moreover, like Smith, defendant lied to the police, which reasonably raised their suspicion (*see id.*). This case is distinguishable from *People v Gokey* (60 NY2d 309 [1983]) where we suppressed marijuana seized from defendant's duffel bag during a warrantless search incident to arrest notwithstanding that the duffel bag was within defendant's "grabbable area" (60 NY2d at 312). In finding that there was no exigency to justify the search in *Gokey*, we noted that "the police sought defendant's arrest for

two nonviolent crimes and the People concede[d] that 'in all frankness there was no immediate suspicion by the police officers that the defendant was in fact armed' " (*id.* at 313). Further, the police had not seized the bag from Gokey upon his arrest "but permitted him to keep the bag between his legs while he was frisked" (*id.*). In this case, there was no such concession by the People, and defendant's handbag was seized and searched contemporaneously with her arrest.

Additionally, while the majority notes that several officers responded to the radio run, and that defendant offered no resistance to the arrest, the loaded firearm was still within defendant's reach, and the presence of a number of officers would not have prevented her from firing the gun at them. Again, a reasonable inference that the requisite exigency existed can be drawn from the facts established at the suppression hearing.

In sum, the determination to deny defendant's motion to suppress the handgun involved "mixed questions of law and fact that are supported by evidence in the record" and are consequently beyond further review by this Court (*Greenidge*, 91 NY2d at 969). Accordingly, I would affirm the Appellate Division order sustaining defendant's conviction.

Judges GRAFFEO, SMITH and RIVERA concur with Chief Judge LIPPMAN; Judge ABDUS-SALAAM dissents and votes to affirm in an opinion in which Judges READ and PIGOTT concur.

Order reversed, defendant's motion to suppress granted, the conviction of second-degree criminal possession of a weapon vacated and that count of the indictment dismissed, the conviction of criminal trespass in the first degree reduced to criminal trespass in the second degree and case remitted to Supreme Court, Bronx County for resentencing.