People v Mabry (2020 NY Slip Op 03540)





People v Mabry


2020 NY Slip Op 03540


Decided on June 24, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 24, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
LEONARD B. AUSTIN
JOHN M. LEVENTHAL
ANGELA G. IANNACCI, JJ.


2015-03579
 (Ind. No. 2297/13)

[*1]The People of the State of New York, respondent,
v
Nathaniel Mabry, appellant.


Janet E. Sabel, New York, NY (Denise Fabiano of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Sharon Y. Brodt, and Aurora Alvarez-Calderon of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (John B. Latella, J.), rendered April 14, 2015, convicting him of burglary in the second degree (two counts), criminal possession of stolen property in the fourth degree (two counts), criminal possession of stolen property in the fifth degree (three counts), and possession of burglar's tools, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial (Steven W. Paynter, J.), after a hearing (Arthur J. Cooperman, J.H.O.), of those branches of the defendant's omnibus motion which were to suppress physical evidence, identification testimony, and his statement to law enforcement officials.
ORDERED that the judgment is affirmed.
On April 12, 2013, at 10:22 a.m., the police received a radio transmission of a burglary in progress in Queens County. The police proceeded to the subject location. Approximately two minutes after the initial radio transmission, another transmission was received stating that the complainant saw the perpetrator, whom the complainant described as a black male wearing a black hat and carrying a backpack, exit from the complainant's house and flee eastbound on a bicycle. Approximately two minutes later, the police observed the defendant, who matched that description, riding a bicycle approximately five blocks from the complainant's house.
Upon stopping the police vehicle and activating its lights and sirens, police officers exited the vehicle and ran toward the defendant. The defendant turned his bicycle around and fled. One of the officers pursued the defendant in the police vehicle. The defendant's bicycle got wedged between a parked car and the police vehicle, at which time the defendant fell off the bicycle.
Approximately one minute later, the complainant arrived at the scene and yelled, "that's him, that's him." Subsequent to the complainant's identification, the defendant was placed under arrest. The complainant informed the police that the defendant had broken into his house. The police recovered the defendant's backpack on the street at the location of the defendant's arrest, inside of which were items belonging to the complainant and others, including, inter alia, three laptops, jewelry, and two passports. At the police station house, the defendant spontaneously stated, "I'm done, I'm done."
The defendant was charged with burglary in the second degree (two counts), criminal possession of stolen property in the fourth degree (two counts), criminal possession of stolen property in the fifth degree (three counts), and possession of burglar's tools. After a hearing, the Supreme Court denied those branches of the defendant's omnibus motion where were to suppress physical evidence, identification testimony, and the statement the defendant made to law enforcement officials. The defendant pleaded guilty to all the charges in the indictment and but retained his right to appeal. He was thereafter adjudicated and sentenced as a persistent violent felony offender predicated upon a 1999 conviction of burglary in the second degree and a 2009 conviction of attempted burglary in the second degree.
We agree with the Supreme Court's denial of that branch of the defendant's motion which was to suppress physical evidence. As an initial matter, contrary to the People's contention, the defendant's arguments on appeal that the police lacked reasonable suspicion and probable cause to stop and arrest him and that the warrantless search of his backpack incident to his arrest was illegal are preserved for appellate review (see People v Houston, 143 AD3d 737, 738; People v Palmer, 84 AD3d 1414, 1414).
The police had reasonable suspicion to pursue and stop the defendant based on the description of the perpetrator which matched the defendant's appearance, the close proximity to the crime scene, and the short passage of time between the commission of the crime and the observation of the defendant (see People v Currie, 131 AD3d 1265, 1265; People v Palmer, 84 AD3d at 1414). The police also had probable cause to arrest the defendant based on the complainant's spontaneous identification near the crime scene shortly after the police stopped the defendant (see People v Daye, 194 AD2d 339, 339-340; see generally People v De Bour, 40 NY2d 210, 223).
Moreover, we find that the police were justified in searching the defendant's backpack incident to his arrest. "Under the State Constitution, to justify a warrantless search incident to arrest, the People must satisfy two separate requirements. The first imposes spatial and temporal limitations to ensure that the search is not significantly divorced in time or place from the arrest. The second, and equally important, predicate requires the People to demonstrate the presence of exigent circumstances" (People v Jimenez, 22 NY3d 717, 721-722 [citations and internal quotation marks omitted]).
"Exigent circumstances may be established by a showing that the search was necessary to ensure the safety of the public or the arresting officer, or that it was necessary to prevent the destruction or concealment of evidence" (People v Houston, 143 AD3d at 739; see People v Jimenez, 22 NY3d at 722). "[E]ven a bag within the immediate control or grabbable area of a suspect at the time of his [or her] arrest may not be subjected to a warrantless search incident to the arrest, unless the circumstances leading to the arrest support a reasonable belief that the suspect may gain possession of a weapon or be able to destroy evidence located in the bag" (People v Jimenez, 22 NY3d at 722 [internal quotation marks omitted]; see People v Gokey, 60 NY2d 309, 311). A container may not be searched for a weapon or evidence if it is apparent that it is so securely fastened that the person arrested cannot quickly reach its contents, or the person arrested makes unmistakably clear that he or she will not seek to reach the contents, or the container is so small that it could not contain a weapon or evidence of the crime (see People v Smith, 59 NY2d 454, 458-459). "While an officer need not affirmatively testify as to safety concerns to establish exigency, such apprehension must be objectively reasonable" (People v Jimenez, 22 NY3d at 723; see People v Dunbar, 183 AD3d 1263; People v Diaz, 107 AD3d 401, 402). Notably, "[t]he crime for which there is probable cause to make the arrest may itself provide the requisite exigency" (People v Jimenez, 22 NY3d at 722). "Exigency may also derive from circumstances other than the nature of the offense" (id.).
Applying these principles here, contrary to the defendant's contention and the determination of our colleague in the dissent, the evidence adduced at the suppression hearing, as well as the reasonable inferences that may be drawn therefrom, established that: (1) the defendant's arrest and the police search of the backpack were in close temporal proximity of each other, and (2) the search was justified by exigent circumstances.
According to the testimony adduced at the suppression hearing, after being chased [*2]by the police, the defendant fell off his bicycle onto the street. When the complainant arrived one minute later and identified the defendant, the defendant was standing up and had not yet been handcuffed. Immediately after the complainant's identification, the defendant was placed under arrest. Approximately two minutes after the defendant's arrest, the police searched the subject backpack which was "on the street, at the location of the arrest." These facts show that the arrest and search of the backpack were for all practical purposes conducted at the same time and in the same place (see People v Smith, 59 NY2d at 459). Additionally, at the time of the arrest, the backpack, which was "on the street, at the location of the arrest," could have been accessed by the defendant and had not yet been reduced to the exclusive control of the police.
Additionally, the circumstances support a reasonable belief that the search of the backpack was necessary to ensure the safety of the arresting officers and the public. The police responded to and arrested the defendant for a burglary, a violent crime. In addition, the defendant was not cooperative with the police. Indeed, the defendant was arrested at the conclusion of a police chase, following his flight from the police on a bicycle. Moreover, the setting of the defendant's arrest and search of the backpack was a public street. These circumstances gave rise to objective and legitimate reasons for the search of the backpack (see People v Harris, 174 AD3d 185).
The defendant's reliance on Arizona v Gant (556 US 332) and People v Jimenez (22 NY3d at 717) is misplaced. The facts of those two cases are distinguishable from the facts of this case. In Arizona v Gant (556 US at 335), a police officer searched the defendant's car after the defendant was locked in the back of a patrol car, having already been handcuffed and arrested for driving with a suspended license. While searching the defendant's car, the officer discovered cocaine in the pocket of a jacket on the backseat (see id.). The United States Supreme Court agreed with the holding of the Arizona Supreme Court that a search incident to arrest exception to the Fourth Amendment's warrant requirement did not apply since the defendant could not have accessed his car to retrieve weapons or evidence at the time of the search (see id.).
In People v Jimenez (22 NY3d at 723-724), other than a police officer's perception that a large purse that was removed from the defendant's shoulder appeared to be heavy, there were no circumstances supporting a reasonable belief that the purse contained weapon or destructible evidence, and nothing connected the defendant or the codefendant to the burglary report at the building in the lobby of which the defendant was arrested for trespass.
Moreover, contrary to his contention, the defendant was not deprived of his right to the effective assistance of counsel at the suppression hearing when defense counsel rested on the record instead of making a closing argument at the suppression hearing (see People v Rodriguez, 134 AD3d 512, 513; cf. People v Johnson, 37 AD3d 363). " A defendant is not denied effective assistance of trial counsel merely because counsel does not make a motion or argument that has little or no chance of success'" (People v Adelman, 36 AD3d 926, 928, quoting People v Stultz, 2 NY3d 277, 287; see People v Caban, 5 NY3d 143, 152). For this same reason, the defendant's counsel was not ineffective because he failed to challenge the constitutionality of the 2009 conviction used to support the defendant's adjudication as a persistent violent felony offender.
The defendant's remaining contentions are without merit.
RIVERA, J.P., AUSTIN and IANNACCI, JJ., concur.
LEVENTHAL, J., dissents, and votes to remit the matter to the Supreme Court, Queens County, for a new determination of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statement to law enforcement officials in accordance herewith, and thereafter a report to this Court advising of the new determination, and to hold the appeal in abeyance in the interim.
I respectfully dissent because I believe that the warrantless search of the defendant's backpack incident to arrest was not justified.
At the outset, I agree with my learned colleagues that, contrary to the People's [*3]argument, the defendant's contentions challenging the warrantless search of his backpack are preserved for appellate review (see CPL 470.05[2]; People v Houston, 143 AD3d 737, 738; People v Palmer, 84 AD3d 1414, 1414).
"The protections embodied in article I, § 12 of the New York State Constitution serve to shield citizens from warrantless intrusions on their privacy interests, including their personal effects" (People v Jimenez, 22 NY3d 717, 719; see People v Gokey, 60 NY2d 309, 312). " All warrantless searches presumptively are unreasonable per se,' and, thus, [w]here a warrant has not been obtained, it is the People who have the burden of overcoming' this presumption of unreasonableness" (People v Anderson, 142 AD3d 713, 714, quoting People v Hodge, 44 NY2d 553, 557; see People v Jimenez, 22 NY3d at 719; People v Gokey, 60 NY2d at 312).
"Under the State Constitution, to justify a warrantless search incident to arrest, the People must satisfy two separate requirements" (People v Jimenez, 22 NY3d at 721). "The first imposes spatial and temporal limitations to ensure that the search is not significantly divorced in time or place from the arrest'" (id., quoting People v Smith, 59 NY2d 454, 458; see People v Gokey, 60 NY2d at 312).
"The second, and equally important, predicate requires the People to demonstrate the presence of exigent circumstances" (People v Jimenez, 22 NY3d at 722; see People v Gokey, 60 NY2d at 312, 313; People v Smith, 59 NY2d at 458). "The Court of Appeals has recognized two interests underlying the exigency requirement: the safety of the public and the arresting officer; and the protection of evidence from destruction or concealment'" (People v Anderson, 142 AD3d at 714, quoting People v Gokey, 60 NY2d at 312; see People v Jimenez, 22 NY3d at 722). "[E]ven a bag within the immediate control or "grabbable area" of a suspect at the time of his [or her] arrest may not be subjected to a warrantless search incident to the arrest, unless the circumstances leading to the arrest support a reasonable belief that the suspect may gain possession of a weapon or be able to destroy evidence located in the bag'" (People v Jimenez, 22 NY3d at 722, quoting People v Gokey, 60 NY2d at 311). "While an officer need not affirmatively testify as to safety concerns to establish exigency, such apprehension must be objectively reasonable" (People v Jimenez, 22 NY3d at 723; see People v Batista, 88 NY2d 650, 654; People v Moore, 32 NY2d 67, 72).
In my view, the People failed to satisfy either requirement. Briefly, a certain police officer, who was the only witness at the suppression hearing, testified that the defendant, who was riding a bicycle, had been carrying a black backpack when that officer first saw him. After the defendant was apprehended, having fallen off his bike that "got wedged" between a parked car and the unmarked police car that the officer was driving, but at a time when the defendant was not yet in handcuffs, the complainant arrived at the location. There were approximately five or six police officers, some in uniform, around the defendant. The complainant screamed, "that's him, that's him," and the defendant was placed under arrest. The officer recovered the backpack and various items—including laptops, a bag of jewelry, a birth certificate, and a social security card, as well as a screwdriver, a "Smith tool," and gloves—that were inside the backpack. Asked, "[n]ow when did you actually recover all of this property, or observe it for the first time," the officer answered, "I observed it for the first time on the street at the location of the arrest location."
There was no testimony at the suppression hearing regarding where the defendant was in relation to the backpack once he was apprehended. That is, the record does not demonstrate whether the defendant was still carrying the backpack after having fallen off the bike or, if he was not carrying it, how far it was from him at the time. Further, there was no testimony as to the degree to which the defendant was immobilized. It bears noting that there were approximately five or six police officers present; further, the record supports the reasonable inference that the defendant had been handcuffed after the complainant identified him. As in People v Hernandez (40 AD3d 777, 779), "because there was no testimony as to the degree to which the defendant was immobilized, or how far away the defendant was from the [backpack], it cannot even be determined whether the [backpack] was in the defendant's immediate control or grabbable area.'" On this record, it was not shown that the backpack was in the defendant's immediate control or "grabbable area". Thus, the People failed to meet their burden.
Moreover, the evidence adduced at the suppression hearing failed to establish the presence of exigent circumstances. Although the police had received information pertaining to a burglary in progress at the complainant's home, and burglary in the second degree is a class C violent felony (see Penal Law §§ 70.02[1][b]; 140.25), there is no evidence that the defendant was armed. The officer did not testify to any circumstances indicating the presence or use of a weapon. The officer did not testify that he feared for officer safety, public safety, or for the integrity of any destructible evidence. Even though the defendant had turned his bike around and fled from officers who had first tried to apprehend him, there is no indication that once the defendant had been apprehended, he was uncooperative, resistant, or aggressive. Before the defendant was placed under arrest, there were approximately five or six police officers around him. Further, a reasonable inference may be drawn that the defendant was handcuffed before the backpack was searched. Unlike in People v Alvarado (126 AD3d 803), where this Court stated that "[f]or compelling reasons, including the safety of the officers or the public, a search not significantly divorced in time or place from the arrest may be conducted even though the arrested person has been subdued and his [or her] closed container is within the exclusive control of the police" (id. at 804 [internal quotation marks omitted] [circumstances supported reasonable belief that backpack contained weapon]), here, no exigent circumstances were present. On this record, the circumstances did not give rise to a reasonable belief that the defendant's backpack contained either a weapon or destructible evidence. Absent the requisite exigency, the warrantless search of his backpack incident to arrest was not justified (see People v Jimenez, 22 NY3d at 722-723; People v Grimes, 175 AD3d 712, 713; People v Geddes-Kelly, 163 AD3d 716, 717; People v Anderson, 142 AD3d at 715).
In my opinion, the appropriate corrective action here would be to remit the matter to the Supreme Court, Queens County, for a new determination of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statement to law enforcement officials in accordance herewith, and thereafter a report to this Court advising of the new determination, and to hold the appeal in abeyance in the interim. The People argued, at the suppression hearing, and they argue now, on appeal, that even if the backpack search was not justified as incident to arrest, the property found in the backpack inevitably would have been discovered at the police station house. The hearing court did not decide that issue. It merely held that the contents of the backpack were admissible as having been recovered incident to arrest. "[B]ecause the Supreme Court did not decide that [inevitable discovery] issue adversely to the defendant, this Court is precluded from reviewing that issue on the defendant's appeal" (People v Chazbani, 144 AD3d 836, 837-838; see CPL 470.15[1]; People v Ingram, 18 NY3d 948, 949; People v LaFontaine, 92 NY2d 470). As this Court explained in Chazbani, "where . . . the alternative issue raised by the People on appeal has not been determined by the trial court, and the resolution of that issue could affect the determination of the suppression motion, we deem it appropriate to hold the defendant's appeal in abeyance and remit the matter for consideration of the alternative issue" (People v Chazbani, 144 AD3d at 839). That is what should happen here.
ENTER:
Aprilanne Agostino
Clerk of the Court