People v Crosse (2021 NY Slip Op 04636)





People v Crosse


2021 NY Slip Op 04636


Decided on August 5, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:August 5, 2021

110464
[*1]The People of the State of New York, Respondent,
v
Eduardo Crosse, Appellant.

Calendar Date:May 25, 2021

Before:Garry, P.J., Egan Jr., Clark, Pritzker and Reynolds Fitzgerald, JJ.

Mark Schneider, Plattsburgh, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Jaime A. Douthat of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Clinton County (Bruno, J.), rendered April 2, 2018, upon a verdict convicting defendant of the crime of criminal possession of forgery devices.
In September 2016, a state trooper and a detective with the City of Plattsburgh Police Department went to an apartment in the Town of Schuyler Falls, Clinton County to attempt to locate a suspect in an assault. When defendant answered the door to the apartment, the trooper asked him to provide identification. Defendant produced a state benefit card with the name "Edward Crosse" on it and told the trooper that he was a guest staying at the apartment. The trooper took the card to his vehicle, ran the name on the card through a database in the vehicle's computer, and discovered that defendant was currently on parole in New York City. When the trooper questioned defendant about his parole status, he initially denied it, but eventually admitted to being on parole and stated that he had permission to be in Schuyler Falls. The trooper then contacted the Parole Department and an officer was dispatched to the residence. While waiting for the parole officer to arrive, the trooper asked defendant if he and the detective could enter the premises to search for the suspect and to determine if anyone else was present; defendant consented. While inside the residence, the trooper observed a backpack, fanny pack and two air guns. Defendant denied owning the air guns but admitted to owning the backpack and fanny pack. Shortly after the parole officer arrived, a warrant for defendant's arrest was issued. After defendant was handcuffed, taken into custody and placed inside the patrol vehicle, the trooper performed a cursory warrantless search — on the hood of the vehicle — of defendant's bags,[FN1] finding several credit and gift cards bearing various names and two devices known as skimmers — one larger than the other.[FN2] The trooper transported defendant to the State Police barracks, where he conducted a second warrantless search of defendant's backpack and fanny pack and inventoried the contents of the bags.
Defendant was charged by indictment with two counts of criminal possession of forgery devices, 11 counts of criminal possession of a forged instrument in the second degree and 11 counts of unlawful duplication of computer related material in the first degree. Defendant moved to suppress the physical evidence. County Court partially denied the motion, finding that the first search was reasonable and done for the purpose of officer safety, but granted that part of defendant's motion concerning the second search, finding insufficient proof of the State Police's inventory policy and procedures. At the close of the People's proof, defendant moved to dismiss the indictment. County Court dismissed all counts except the one count of criminal possession of forgery devices that was related to possession of the larger skimmer. Defendant was found guilty of that count and [*2]was sentenced, as a second felony offender, to a prison term of 3 to 6 years. Defendant appeals.
Defendant contends that County Court erred in denying his motion to dismiss count 1 of the indictment for criminal possession of forgery devices, because the People failed to prove that the larger skimmer was operable. A verdict is supported by legally sufficient evidence if, when viewed in the light most favorable to the People, there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (People v Bleakley, 69 NY2d 490, 495 [1987]; see People v Allah, 57 AD3d 1115, 1116 [2008], lv denied 12 NY3d 780 [2009]). As relevant here, the People had to prove that defendant possessed a device with the intention of using it "for purposes of forgery", and that the device was "capable of or adaptable to such use" (Penal Law § 170.40 [2]).
The trooper testified at trial that he took defendant's backpack and fanny pack from the residence. Upon opening the fanny pack, the trooper noticed a stack of credit cards and gift cards in defendant's name and in other individuals' names. He also found two skimmers, which he explained could "read and write the magnetic strips of a credit card." The trooper further testified that through his experience and training, he became familiar with how skimmers can fraudulently move money with gift cards. He explained that each credit card's magnetic strip stores digital information, and a person with a skimmer and an attached computer could read the data stored there, save it and then write it to a different card. As to the smaller skimmer, the trooper explained that it was battery operated and would be used to read card data, which could then be stored and transmitted to a separate writer. The prosecutor then handed the trooper the fanny pack, and, in front of the jury, he removed the larger skimmer and explained that the device could write data stored on a computer onto the magnetic strips of cards. A second state trooper testified at trial that he recognized the larger skimmer as a magnetic card reader and decoder with Bluetooth capabilities that could also write information onto magnetic strips.
As to defendant's contention that the People had to prove that the skimmer was operable, "in interpreting the Penal Law, the provisions must be read according to the fair import of their terms to promote justice and effect the objects of the law" (People v Roberts, 31 NY3d 406, 418 [2018] [internal quotation marks and citation omitted]). Here, Penal Law § 170.40 (2) does not require the device to be operable, but rather provides that a person must make or possess a device capable of or adaptable for purposes of forgery. Nor did the Legislature choose to qualify the word "adaptable" by the use of any adjective such as "readily" (see People v Excell, 254 AD2d 369, 369 [1998], lv denied 92 NY2d 1031 [1998]; compare [*3]Penal Law §§ 170.40 [1], [2]; 190.85 [2], with Penal Law §§ 10.00 [12], [13]; 225.00 [7-a], [8]). Accordingly, the People did not have to prove the skimmer's operability. Therefore, after viewing the evidence and the testimony in the light most favorable to the People, we find that the verdict was supported by legally sufficient evidence (see People v Bleakley, 69 NY2d at 494-495; People v Rebollo, 107 AD3d 1059, 1061 [2013]).
Defendant next contends that County Court erred in allowing testimony about the larger skimmer and admitting it into evidence because it was the product of an illegal warrantless search. We agree. "All warrantless searches presumptively are unreasonable per se, and, thus, where a warrant has not been obtained, it is the People who have the burden of overcoming this presumption of unreasonableness" (People v Jimenez, 22 NY3d 717, 721 [2014] [internal quotation marks, brackets and citations omitted]). "To justify a warrantless search of a closed container incident to arrest, the People must satisfy two requirements: The first imposes spatial and temporal limitations to ensure that the search is not significantly divorced in time or place from the arrest" (People v Ortiz, 141 AD3d 872, 875 [2016] [internal quotation marks and citations omitted]). Specific to this "place" requirement, the item searched must be conducted within the immediate control or grabbable area of the suspect (see People v Gokey, 60 NY2d 309, 312 [1983]; People v Morales, 126 AD3d 43, 45 [2015]). "The second, and equally important, predicate requires the People to demonstrate the presence of exigent circumstances" (People v Ortiz, 141 AD3d at 875 [internal quotation marks and citations omitted]). The well-recognized public policies underlying the allowance of warrantless searches in exigent circumstances are "the safety of the public and the arresting officer; and the protection of evidence from destruction or concealment" (People v Jimenez, 22 NY3d at 722 [internal quotation marks and citation omitted]).
As to the first requirement, the trooper testified that he removed the fanny pack and backpack from the apartment when he left and then placed defendant — who was in handcuffs — in the patrol vehicle. Thereafter, the trooper made a cursory search of the fanny pack and backpack on the hood of the vehicle. At the time of the search, defendant was incapable of grabbing the items as he was handcuffed and inside the trooper's vehicle. The fanny pack and backpack were in the exclusive control of the trooper and defendant could not possibly gain possession of them or destroy any evidence in them (see People v Morales, 126 AD3d at 46; People v Boler, 106 AD3d 1119, 1123 [2013]).
Further, the People failed to establish the requisite exigent circumstances justifying a warrantless search. On the contrary, the record reflects that defendant's demeanor and actions were not threatening, he had been pat-frisked earlier in the apartment, he was cooperative [*4]and offered no resistance when he was handcuffed and, most importantly, the circumstances of defendant's arrest did not give rise to a reasonable belief that the fanny pack or backpack contained a weapon or dangerous instrument (see People v Jimenez, 22 NY3d at 722-723; People v Ortiz, 141 AD3d at 875). As such, the trooper's testimony at the suppression hearing did not demonstrate exigent circumstances. Rather, he testified at the hearing that, before he places anyone's belongings in his vehicle he — as a matter of practice for his own safety — opens those belongings to make sure there are no weapons or other items that could break or cause damage. "As the People failed to establish the legality of the warrantless search of the [fanny pack and backpack], the evidence seized therein, including the [skimmers], must be suppressed" (People v Boler, 106 AD3d at 1123; see People v Jimenez, 22 NY3d at 724; People v Ortiz, 141 AD3d at 875).
Defendant next contends that all of his statements made during the encounter with the state trooper and parole officer at the residence must be suppressed. Although defendant sought to suppress these statements, the specific reason advanced on appeal was not raised before County Court in his motion papers or during the Huntley hearing. Therefore, this issue is unpreserved for our review (see People v Weaver, 167 AD3d 1238, 1240 [2018], lv denied 33 NY3d 955 [2019]; People v Durrin, 32 AD3d 665, 666 [2006]). Defendant's remaining contentions are hereby rendered academic by our determination.
Garry, P.J., Clark and Pritzker, JJ., concur.
Egan Jr., J. (concurring).
I concur with the decision of the majority to reverse the judgment of conviction, but for a different reason.
Several weeks before the trial of this matter, County Court issued a well-reasoned written decision following a hearing on defendant's suppression motion. As County Court aptly noted therein, the State Police conducted two separate searches of defendant's bags: (1) a cursory search at the scene of his arrest — which resulted in nothing being seized — and (2) a more extensive search after defendant had been transported to the State Police barracks where, among other things, a large card skimmer/reader device and various credit and gift cards were seized. Concluding that the first warrantless search of defendant's bags was justified for officer safety reasons,[FN3] County Court denied the suppression motion with respect to the trooper's observations of the contents of the bags. Finding that those exigent circumstances had abated by the time defendant arrived at the barracks, however, County Court granted defendant's motion to suppress the items seized during the second warrantless search of defendant's bags. I perceive no error in County Court's suppression rulings.
Fast forwarding to the trial, the People called to the stand the state trooper who had conducted both searches and elicited his account of them. Then, inexplicably, the People [*5]presented the trooper with People's exhibit No. 2-A — the large card skimmer/reader device that had been seized from one of defendant's bags at the barracks and subsequently suppressed by County Court. Following the trooper's authentication thereof, the People offered exhibit No. 2-A into evidence. Not unexpectedly, defendant objected, noting the court's prior suppression ruling. After hearing argument on this issue out of the jury's presence, County Court denied the objection, admitted exhibit No. 2-A into evidence and the People promptly published it to the jury. Unlike the majority, I find no fault with the trooper's initial search of defendant's bags at the scene of his arrest; the problem here is the second search. County Court's first instinct was the correct one and it should not have reversed itself and admitted into evidence something it had previously suppressed.
ORDERED that the judgment is reversed, on the law, motion to suppress the contents of the fanny pack and backpack and any testimony related to said contents granted, and matter remitted to the County Court of Clinton County for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: The warrantless search was performed by the trooper, not the parole officer. Therefore, this is not a situation involving a parolee's reduced expectation of privacy when a parole officer conducts a warrantless search that is reasonably related to the performance of the parole officer's duties (see People v McMillan, 29 NY3d 145, 148 [2017]).

Footnote 2: These devices are capable of reading, decoding and storing data from the magnetic strip on credit and gift cards.

Footnote 3: Defendant was encountered after the police went to an apartment in search of another person of interest in an assault investigation. Defendant was alone in the apartment and two handguns, which were determined to be air pistols, were observed lying on a couch on top of some folded clothing next to two bags. Defendant told the police that the clothing and bags were his, but the guns were not. Defendant was on parole for a robbery conviction out of Kings County.