■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NATASHA BOLER, Appellant. [964 NYS2d 688]—

Spain, J. Appeal from a judgment of the Supreme Court (Czajka, J.), rendered February 4, 2011 in Ulster County, convicting defendant upon her plea of guilty of the crimes of criminal possession of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the fourth degree, and the violation of unlawful possession of marihuana.

On February 19, 2010 at approximately 9:00 p.m., Officer Joseph Garvila, a canine division officer with the Town of Ulster Police Department, received a call from his dispatcher that he had received a phone call with a tip regarding two black women shooting heroin in a gold or tan Nissan Maxima with a specific license plate, in the parking lot of a particular discount store. Garvila, with his canine partner, a dog named Dak, proceeded to that location and was directed by a store security employee to a car parked in the lot matching that description (the license plate was one number off) in which two black women were sitting. Garvila parked his car to the rear of that car and Nancy Girard exited the passenger side of the vehicle. Garvila noted that she was "very antsy, jittery," "couldn't stand still," "waving her hands around" "very excited, moving around a lot" and appeared to be under the influence of "some type of substance." As the officer approached, defendant exited the driver's side holding a small black purse; he observed a white powdery substance under her nostrils, and that her speech was "slurred" and "very slow." He asked for identification and engaged in a brief conversation until a backup officer, Megan Sutton, arrived and the women were separated on either ends of the car, briefly questioned, and patted down for weapons. Sutton then informed Garvila that she found two "crack pipes" on Girard's person, and defendant refused Garvila's request for consent to search. Garvila then informed the women that he was going to walk his canine partner around the vehicle exterior; he asked the women to step away and wait with Sutton at her adjacent patrol car, directing defendant to place her purse on the hood of her car (hereinafter the hood purse).

During an exterior pass, the narcotics detection-trained canine alerted on the hood purse and at the passenger door handle, signs that his sniff had detected the odor of drugs. Inside the car, the canine indicated on the right rear passenger floor area, where a second purse was found (hereinafter the car purse), reflecting that he had zeroed in on the source of the narcotic odor. When asked by Garvila, defendant admitted that

both purses were hers; a search of the car purse disclosed a small bag of marihuana and prescription pill bottles bearing defendant's name. Defendant and Girard were placed under arrest and handcuffed. Garvila then searched the hood purse and discovered money and several decks (i.e., glassine envelopes) of heroin and then questioned defendant about the contents. A subsequent inventory search of the vehicle revealed over 500 decks of heroin and cocaine located in a small cardboard box inside a plastic bag in the vehicle trunk, but no needles.

A combined *Mapp/Huntley* suppression hearing was held at which only Garvila testified and a DVD recording of the incident from a dashboard camera[1] in his patrol car was submitted as evidence. The source of the tip was not disclosed at the hearing. County Court (Williams, J.) issued an oral ruling denying defendant's motion to suppress the physical evidence seized by police from the purses and vehicle. As for defendant's statements, the court appears to have ruled that defendant's statements prior to the canine search are admissible, but otherwise suppressed any subsequent statements. Thereafter, defendant entered a guilty plea to criminal possession of a controlled substance in the third degree (two counts), criminal possession of a controlled substance in the fourth degree and unlawful possession of marihuana. Defendant appeals, challenging the partial denial of her motion to suppress.

Regarding the physical evidence seized, defendant contends that it should have been suppressed in that Garvila's conduct was, from its inception, unjustified and unreasonable. In evaluating police action, we consider whether it was justified at its inception and, if so, whether it was "reasonably related in scope to the circumstances which justified the interference in the first place" (*People v William II*, 98 NY2d 93, 98 [2002] [internal quotation marks and citation omitted]; *see People v De Bour*, 40 NY2d 210, 215, 222 [1976]). An approach of a parked vehicle and request for information may be undertaken for "an objective, credible reason" (*People v Ocasio*, 85 NY2d 982, 984 [1995], citing *People v Harrison*, 57 NY2d 470, 475-476 [1982]). At the suppression hearing, defense counsel conceded that upon finding the two women in the vehicle at the location as described by the anonymous tip, police had a common-law right to inquire, which is activated by a "founded suspicion that criminal activity is afoot and permits [an officer] . . . to interfere with a citi-

1. The dashboard camera was not pointed in the direction of defendant's vehicle and, thus, the DVD captured only audio at the outset of the encounter; it first visually depicts defendant and Girard when they stepped away from defendant's vehicle with Sutton to allow the canine pass.

zen to the extent necessary to gain explanatory information, but short of a forcible seizure" (*People v De Bour*, 40 NY2d at 223). While Garvila did not, upon approaching the vehicle, observe the women using drugs or the presence of any needles necessary to "shoot" heroin, the fact that the scene matched the tip at the specified location allowed Garvila upon approach to request identification and ask general and investigative questions (*see People v Moore*, 6 NY3d 496, 498 [2006]). He was entitled to ask the women to exit the vehicle (*see People v Russ*, 61 NY2d 693, 694 [1984]), and we defer to County Court's fact-finding that as Garvila approached, Girard exited first, unrequested, and then defendant alighted of her own accord at the same time as Garvila asked her to do so (*see People v Culver*, 69 AD3d 976, 977 [2010]).

Upon observing Girard's hyper behavior and appearance of being under the influence of drugs, which the DVD fully depicts, as well as the white powder under defendant's nostrils and her slurred and slow speech, and the crack pipes found shortly thereafter on Girard,[2] and considering the information relayed in the tip, Garvila had a reasonable suspicion that defendant was involved in a crime so as to stop and detain her for questioning (*see* CPL 140.50 [1]). The circumstances thus also supported a "founded suspicion that criminal activity is afoot" (*People v De Bour*, 40 NY2d at 223), the lower standard which authorizes a request for consent to search and the canine search of the vehicle's exterior (*see People v Devone*, 15 NY3d 106, 113 [2010]; *People v Anderson*, 104 AD3d 968, 970 [2013]; *People v Whalen*, 101 AD3d 1167, 1168 [2012], *lv denied* 20 NY3d 1105 [2013]).

Moreover, once the dog alerted, probable cause existed to search the vehicle (*see People v Gathogo*, 276 AD2d 925, 927 [2000], *lv denied* 96 NY2d 734 [2001]; *see also Florida v Harris*, 568 US —, 133 S Ct 1050 [2013]; *People v Offen*, 78 NY2d 1089, 1091 [1991]; *People v Abdur-Rashid*, 64 AD3d 1087, 1089 [2009], *affd* 15 NY3d 106 [2010]). Under the "automobile exception" to the Fourth Amendment search warrant requirement, police "may search a vehicle without a warrant when they have probable cause to believe that evidence or contraband will be found there" (*People v Galak*, 81 NY2d 463, 466-467 [1993]). Thus, the canine search of the vehicle interior was lawful. Further, the inventory search of defendant's vehicle following her and Girard's arrest, in which heroin and cocaine were discovered in

---

2. Nothing was found on defendant's person during the pat down and defendant conceded that she lacked standing to challenge the pat down of Girard's person (*see People v Wesley*, 73 NY2d 351, 357-358 [1989]).

the trunk, was lawful (*see People v Walker*, 20 NY3d 122, 125 [2012]). As established by Garvila's testimony, which County Court credited, the inventory search was conducted pursuant to "reasonable police regulations relating to inventory procedures administered in good faith" (*Colorado v Bertine*, 479 US 367, 374 [1987]). Thus, all of the evidence seized from inside the vehicle was properly ruled admissible.

The warrantless search of the hood purse requires a different analysis. Defendant placed that purse on the hood of her vehicle at Garvila's direction prior to the canine pass and alert. At the time the hood purse was searched, defendant had already been arrested, handcuffed and placed in Sutton's vehicle[3] and was, like Girard, under Sutton's control and not in the vicinity of the hood purse. Thus, the search of the hood purse without a warrant cannot be justified as a search incident to defendant's arrest (*see People v Gokey*, 60 NY2d 309, 312 [1983]), which is "limited to the arrestee's person and the area from within which [she] might gain possession of a weapon or [destroy] evidence" (*People v Blasich*, 73 NY2d 673, 677-678 [1989]; *see People v Gokey*, 60 NY2d at 312; *People v Smith*, 59 NY2d 454, 458 [1983]; *People v Belton*, 55 NY2d 49, 52-53 [1982]). Further, the search of the hood purse is not authorized by the automobile exception because it was not found inside the vehicle (*see People v Galak*, 81 NY2d at 467); likewise, the search of the hood purse preceded the inventory search and, in any event, it was not part of the contents of the vehicle impounded (*see People v Walker*, 20 NY3d at 125-126; *People v Gomez*, 13 NY3d 6, 11 [2009]; *People v Galak*, 80 NY2d 715, 716, 720 [1993]; *see also People v Johnson*, 1 NY3d 252, 256 [2003]). As the People failed to establish the legality of the warrantless search of the hood purse, the evidence seized therein, including the heroin, must be suppressed.

Turning to defendant's motion to suppress her statement to police admitting ownership of the car purse, it was undisputed that defendant was never, at any point, advised of her *Miranda* rights. County Court's *Huntley* ruling is somewhat unclear. The DVD recording establishes that when Garvila found the car purse during the canine sniff of the car interior, he specifically

---

**3.** Garvila testified that both purses were searched prior to defendant's arrest, and County Court so found. However, the DVD reflects that defendant was already in custody and in Sutton's car when Garvila searched the hood purse. Even were we to find that the DVD supports the court's finding that defendant was arrested after the search of both purses, the evidence does not support the conclusion that the hood purse was within defendant's grabbable area at the time of arrest (or even when it was searched) so as to justify it as a search incident to her arrest.

asked "whose purse is this?" to which defendant responded "they're [i.e., the purses] both mine." Thus, defendant's statement was in response to police questioning and was clearly not spontaneous, as implied by the suppression ruling (*see People v Ferro*, 63 NY2d 316, 322 [1984], *cert denied* 472 US 1007 [1985]; *People v Stoesser*, 53 NY2d 648, 650 [1981]).

Upon our review of the testimony and evidence, we find that at the time that defendant was confronted by Garvila with evidence that police had received a tip that they were doing drugs and that their activity had been captured on the store's surveillance camera, prior to the canine search, "a reasonable person innocent of any wrongdoing would [not] have believed that he or she was . . . free to leave" (*People v Paulman*, 5 NY3d 122, 129 [2005]). As such, defendant's subsequent nonsponteaneous statement that she owned the car purse was made during a custodial interrogation, without *Miranda* advisements, and must be suppressed (*see id.*). However, looking at the totality of the circumstances in which this statement was obtained, we find that the People proved beyond a reasonable doubt that it was voluntary (*see* CPL 60.45; *People v Anderson*, 42 NY2d 35, 38-39 [1977]; *People v Pouliot*, 64 AD3d 1043, 1044-1046 [2009], *lv denied* 13 NY3d 838 [2009]; *compare People v Holland*, 48 NY2d 861, 862-863 [1979]). Thus, County Court properly ruled that the statement could be used at trial to impeach defendant's credibility if she were to testify (*see People v Maerling*, 64 NY2d 134, 140 [1984]; *People v Washington*, 51 NY2d 214, 219-220 [1980]). Given our decision, the matter must be remitted to County Court to afford defendant the opportunity to withdraw her guilty plea. Defendant's remaining claims lack merit.

Lahtinen, J.P., Stein and Garry, JJ., concur. Ordered that the judgment is modified, on the law and the facts, by reversing so much thereof as denied that part of defendant's motion seeking suppression of the purse placed on the hood of the car and defendant's statements related to the purse found on the floor of the car; motion granted to that extent, sentences vacated and matter remitted to the County Court of Ulster County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

