People v Stover (2020 NY Slip Op 01676)





People v Stover


2020 NY Slip Op 01676


Decided on March 12, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 12, 2020

110715

[*1]The People of the State of New York, Respondent,
v
Gregory Stover, Appellant.

Calendar Date: December 18, 2019

Before: Garry, P.J., Egan Jr., Aarons, Pritzker and Colangelo, JJ.


Stephen W. Herrick, Public Defender, Albany (Jessica Gorman of counsel), for appellant.
P. David Soares, District Attorney, Albany (Jonathan P. Catania of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered October 29, 2018, convicting defendant upon his plea of guilty of the crime of criminal possession of a weapon in the second degree.
Defendant was in his parked vehicle when police officers approached the car, asked him for identification and discovered that his driver's license was suspended. The officers arrested defendant for aggravated unlicensed operation of a motor vehicle and arranged to tow the car. Upon conducting an inventory search, the officers found a handgun in the trunk. Defendant was charged with criminal possession of a weapon in the second degree and thereafter moved for suppression of the handgun. Following a hearing, County Court denied the motion, finding that the police officers' initial approach was appropriate, and that the handgun was seized pursuant to a lawful inventory search. Without waiving his right to appeal, defendant pleaded guilty to criminal possession of a weapon in the second degree and was sentenced, in accord with the plea agreement, to a prison term of five years to be followed by five years of postrelease supervision.[FN1] Defendant appeals.
Defendant contends, among other things, that his suppression motion should have been granted because the officers did not have a valid reason for their initial approach to his vehicle. "In People v De Bour (40 NY2d 210 [1976]), the Court of Appeals 'set forth a graduated four-level test for evaluating street encounters initiated by the police: level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime'" (People v Rose, 155 AD3d 1322, 1323 [2017], lv denied 31 NY3d 986 [2018], quoting People v Moore, 6 NY3d 496, 498-499 [2006] [citation omitted]; see People v De Bour, 40 NY2d at 223). A police approach to an occupied, stationary vehicle is subject to the first level of the De Bour analysis (see People v Stevenson, 149 AD3d 1271, 1272 [2017], lv denied 29 NY3d 1134 [2017]; People v Boler, 106 AD3d 1119, 1121 [2013]).[FN2] Thus, police officers were authorized to approach defendant's vehicle and ask him "briefly about his . . . identity, destination, or reason for being in the area" only if this intrusion was "supported by an objective, credible reason, not necessarily indicative of criminality" (People v Grays, 179 AD3d 1149, ___, 2020 NY Slip Op 00002, *1 [2020] [internal quotation marks and citation omitted]; see People v Whalen, 101 AD3d 1167, 1168 [2012], lv denied 20 NY3d 1105 [2013]; People v Wallgren, 94 AD3d 1339, 1340-1341 [2012]).
A police officer testified that, on the night of the incident, he and his partner were surveilling the parking lot of a private club, an area he described as a "hot spot" for crimes. At approximately 3:00 a.m., they saw a white Honda pull in and park in the lot; the driver got out and entered the club. The officer and his partner then left the area and returned approximately 40 minutes later. The officer could not remember whether the club was still open at that time; he said that it ordinarily closed at 4:00 a.m. or a little earlier. A few cars were still present in the lot, including the white Honda. The vehicle was parked in the same location where the officers had seen it earlier, and was occupied by defendant, whom the officers believed they had seen earlier driving the car and entering the club. Defendant was alone in the car and was engaged in a loud, "heated argument" on his cell phone.
The officers approached, asked defendant "what he was doing in the car [and] if everything was okay," and requested identification. Defendant responded that everything was fine and that "he was having an argument with his girlfriend," and he provided a facially valid driver's license. Upon running the license, the officers learned that it had been suspended for an insurance lapse. The officers then arrested defendant, conducted the inventory search and discovered the gun in the trunk.[FN3]
The authority of police to approach individuals and request information is fairly broad, but such an intrusion "must be predicated on more than a hunch, whim, caprice or idle curiosity" (People v Ocasio, 85 NY2d 982, 985 [1995]; see People v Hollman, 79 NY2d 181, 190 [1992]; People v De Bour, 40 NY2d at 217). The Court of Appeals has held that the fact that an encounter took place in "a discrete area of a city identified as a high crime area" does not, without more, justify police in approaching an individual to request information and identification (People v McIntosh, 96 NY2d 521, 526 [2001]; see People v Savage, 137 AD3d 1637, 1639 [2016]; People v Johnson, 109 AD3d 449, 450 [2013], lv dismissed 23 NY3d 1001 [2014]; People v Miles, 82 AD3d 1010, 1011 [2011]). As that Court explained, "it has been crucial whether a nexus to conduct existed, that is, whether the police were aware of or observed conduct which provided a particularized reason to request information" beyond mere presence in an area where others had been known to commit crimes (People v McIntosh, 96 NY2d at 526-527 [emphases added]). Here, there was no such nexus between the presence of defendant's vehicle in a high-crime area and any conduct on his part.
Police had seen defendant enter the club earlier and had no reason to believe that he was anything but a customer with a legitimate reason to be there. His vehicle was legally parked on private property (see People v Mobley, 48 AD3d 374, 375 [2008]; compare People v Stevenson, 149 AD3d at 1272; People v Alejandro, 142 AD3d 876, 876 [2016], lv denied 28 NY3d 1070 [2016]; People v O'Brien, 140 AD3d 1325, 1325-1326 [2016]; People v Thomas, 19 AD3d 32, 33-34 [2005], lv denied 5 NY3d 795 [2005]). The club was either still open or had just closed, and a few other vehicles were present (see People v Miles, 82 AD3d at 1010-1011; compare People v Grays, 2020 NY Slip Op 00002 at *1; People v Dunn, 253 AD2d 712, 712 [1998], lvs denied 92 NY2d 1031 [1998]). The condition of defendant's vehicle posed no reason for concern (compare People v Harrison, 57 NY2d 470, 475 [1982]; People v Whalen, 101 AD3d at 1168; People v Evans, 175 AD2d 456, 457 [1991], lv denied 79 NY2d 856 [1992]). Police had not observed any erratic or unusual driving when defendant arrived (compare People v Karagoz, 143 AD3d 912, 914 [2016]; People v Wallgren, 94 AD3d at 1340), nor had they received tips or other information associating defendant's vehicle with any reason for further inquiry (compare People v Farnsworth, 134 AD3d 1302, 1303 [2015], lv denied 27 NY3d 1068 [2016]; People v Witt, 129 AD3d 1449, 1449 [2015], lv denied 26 NY3d 937 [2015]; People v Boler, 106 AD3d at 1120).
The only remaining factor — defendant's engagement in an argument on his cell phone while alone in his private vehicle — did not provide any apparent nexus to the drug and weapons crimes that police said were typically committed in the area, or give rise to any other objective reason to question his presence. Nothing about a driver's conduct in arguing on a cell phone, without more, suggests criminal activity related to weapons or drugs (compare People v Haggray, 173 AD2d 962, 963 [1991], lv denied 78 NY2d 966 [1991]). A sole occupant of a private vehicle arguing with someone who is not present gives rise to no apparent reason for police to intervene, such as potential safety concerns (compare People v Black, 59 AD3d 1050, 1050 [2009], lv denied 12 NY3d 851 [2009]) or a need for assistance (compare People v Grays, 2020 NY Slip Op 00002 at *1).
Thus, we find that police did not have the requisite objective, credible reason for approaching defendant's vehicle in the first instance. The encounter was further invalid because police had no objective, credible reason to extend the initial conversation by running defendant's driver's license after he responded to their initial inquiry and provided the information they requested (see People v Mobley, 48 AD3d at 375; People v Hogencamp, 295 AD2d 808, 810 [2002]). The officer gave no explanation for his decision to intrude further at that point, nor does the record reveal such an explanation. Nothing about the exchange with defendant gave rise to any reason to suspect that he was not telling the truth (compare People v Stevenson, 149 AD3d at 1272). Defendant's driver's license did not appear to belong to someone else (compare People v Ocasio, 85 NY2d at 984) or reveal anything unusual on its face (compare People v Grays, 2020 NY Slip Op 00002 at *1). Lacking an objective, credible reason that justified police in approaching defendant's vehicle and making inquiries, the encounter was invalid at its inception (see People v McIntosh, 96 NY2d at 525-527; People v Laviscount, 116 AD3d 976, 978-979 [2014], lv denied 24 NY3d 962 [2014]; People v Hurdle, 106 AD3d 1100, 1104 [2013], lvs denied 22 NY3d 956, 996 [2013]; People v Miles, 82 AD3d at 1010-1011; People v Mobley, 48 AD3d at 375; People v Rutledge, 21 AD3d 1125, 1126 [2005], lv denied 6 NY3d 758 [2005]). Accordingly, defendant's motion to suppress the physical evidence should have been granted. As such, the judgment must be reversed and the indictment dismissed. Defendant's remaining arguments are rendered academic by this determination.
Aarons, Pritzker and Colangelo, JJ., concur.
Egan Jr., J. (dissenting).
Because County Court did not, in my opinion, err in denying defendant's motion to suppress statements made by him to the police and the physical evidence seized from him, I respectfully dissent.
"In People v De Bour (40 NY2d 210 [1976]), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters when a police officer is acting in a law enforcement capacity. The first level permits a police officer to request information from an individual, and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality. The second level, known as the common-law right of inquiry, requires a founded suspicion that criminal activity is afoot, and permits a somewhat greater intrusion. The third level permits a police officer to forcibly stop and detain an individual. Such a detention, however, is not permitted unless there is a reasonable suspicion that an individual is committing, has committed, or is about to commit a crime. The fourth level authorizes an arrest based on probable cause to believe that a person has committed a crime" (People v Karagoz, 143 AD3d 912, 913-914 [2016] [internal quotation marks and citations omitted]; see People v Hollman, 79 NY2d 181, 184-185 [1992]).
Here, the police approached defendant's parked vehicle after observing defendant inside screaming at someone on his cell phone. The officer did not stop defendant's vehicle and did not ask any accusatory questions focusing on possible criminality. Although defendant's actions may have had an innocent explanation, they nevertheless served as the basis for a level one police inquiry under De Bour, including the officer's request for defendant's driver's license and a check of the status thereof, without need for further justification (see People v Ocasio, 85 NY2d 982, 984 [1995]; People v Stevenson, 149 AD3d 1271, 1272 [2017], lv denied 29 NY3d 1134 [2017]; People v Karagoz, 143 AD3d at 914; People v Thomas, 19 AD3d 32, 41 [2005], lv denied 5 NY3d 795 [2005]). Had defendant's license been valid, any further escalation of this police encounter would not have been warranted under De Bour. However, defendant's driver's license was not valid — it was suspended, thus providing the basis for the arrest of defendant for aggravated unlicensed operation of a motor vehicle. Because defendant could not legally drive the vehicle, the subsequent towing and inventory search of it (during which a loaded 9mm pistol was found) were legally justified.
ORDERED that the judgment is reversed, on the law, motion to suppress granted, and indictment dismissed.



Footnotes

Footnote 1: Following sentencing, County Court granted defendant's motion for a stay of the judgment of conviction pending appeal (see CPL 460.50).

Footnote 2: In contrast, a stop of a moving vehicle must be based upon a reasonable suspicion of criminal activity (see People v Ocasio, 85 NY2d 982, 984 [1995]).

Footnote 3: The officer who spoke with defendant testified that he asked defendant "if he had anything in the car, anything like that that we need to know about." This "pointed, accusatory question[]" would have been improper if asked during the initial encounter (People v Jordan, 9 AD3d 792, 795 [2004], lv denied 3 NY3d 708 [2004]). On cross-examination, the officer clarified that he asked this question "later" and not as part of his initial conversation. County Court found that the officer did not ask this question until after discovering that defendant's license was suspended — a factual assessment to which this Court defers (see e.g. People v Harrison, 162 AD3d 1207, 1210-1211 [2018], lv denied 32 NY3d 1205 [2019]).