People v Sanders (2020 NY Slip Op 04203)





People v Sanders


2020 NY Slip Op 04203


Decided on July 23, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 23, 2020

109090 110049

[*1]The People of the State of New York, Respondent,
v
Rasheen Sanders, Appellant.

Calendar Date: June 9, 2020

Before: Lynch, J.P., Devine, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


John A. Cirando, Syracuse, for appellant.
Michael A. Korchak, District Attorney, Binghamton (Stephen D. Ferri of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeals (1) from a judgment of the County Court of Broome County (Dooley, J.), rendered January 18, 2017, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree (two counts) and tampering with physical evidence, and (2) by permission, from an order of said court, entered January 6, 2018, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
On April 26, 2016, State Trooper Bruce Shive was in an unmarked car with his K-9 partner when he noticed a vehicle ahead of him that had excessively tinted windows. There was a minivan behind this vehicle and Shive activated his emergency lights to alert the driver of the minivan that he intended to effectuate a traffic stop. At that point, the vehicle accelerated and then turned down a city street and cut through the parking lot of a KFC, driving the wrong way through the drive-through lane. As Shive navigated through the KFC parking lot, he activated his lights and siren; defendant stopped approximately one block later. After questioning defendant, Shive performed a canine search of the exterior of the vehicle. The subsequent "alert" by the dog led to a search of the KFC parking lot, which resulted in the discovery of a bag containing a substance later determined to be 18.712 grams of heroin. Defendant was arrested and indicted on two counts of criminal possession of a controlled substance in the third degree and one count of tampering with physical evidence.
Defendant moved to suppress, among other things, any oral and/or written statements on the basis that the People failed to comply with CPL 710.30, and also to suppress the physical evidence. County Court summarily denied that part of the motion seeking to suppress the heroin found in the KFC parking lot on the ground that defendant abandoned it. Following a hearing, County Court orally granted the motion to preclude defendant's statements and, thereafter, issued a written decision denying suppression of the physical evidence found in defendant's vehicle. At the conclusion of a jury trial, defendant was convicted as charged and sentenced to a concurrent prison term of 12 years, with three years of postrelease supervision, for each criminal possession of a controlled substance conviction and a lesser concurrent prison term for the tampering with physical evidence conviction. Defendant's subsequent motion to vacate the judgment of conviction on the basis of ineffective assistance of counsel, pursuant to CPL 440.10, was unsuccessful. Defendant appeals from the judgment of conviction and, by permission, from the order denying his postjudgment motion.
Defendant argues that the search of his vehicle was unlawful as there was no "founded suspicion" of criminal activity to warrant a search. "In People v De Bour (40 NY2d 210 [1976]), the Court of Appeals set forth a graduated four level test for evaluating street encounters initiated by the police: level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (People v Stover, 181 AD3d 1061, 1061-1062 [2020] [internal quotation marks and citations omitted]). At the suppression hearing, Shive testified that, prior to stopping defendant, he had noticed the tinted windows and, when he activated his emergency lights, defendant "rapidly accelerated" and "squared the block." Shive observed defendant cut through the KFC parking lot against the one-way markers and then proceed to "slow roll"[FN1] for a block before actually stopping. When explaining the "slow roll," Shive testified that defendant did not immediately stop and that he continued for the distance of a city block before actually coming to a complete stop. He said that when he approached defendant and questioned him, defendant was contentious and evasive in his responses.
Based on the foregoing, we agree with County Court's conclusion that Shive possessed a founded suspicion of criminal activity so as to justify his request to search defendant's vehicle (see People v Whalen, 101 AD3d 1167, 1167-1168 [2012], lv denied 20 NY3d 1105 [2013]) and, when defendant refused, allowed him to employ the use of his K-9 partner (see People v Devone, 15 NY3d 106, 113 [2010]). The subsequent search of the interior of the vehicle was justified by the canine alerting at the driver side window (see People v Boler, 106 AD3d 1119, 1122 [2013]; People v Abdur-Rashid, 64 AD3d 1087, 1089 [2009], affd 15 NY3d 106 [2010]). To the extent that defendant argues that the heroin found in the KFC parking lot should have been suppressed, the record supports County Court's conclusion that it was abandoned (see People v Boodle, 47 NY2d 398, 404 [1979], cert denied 444 US 969 [1979]; People v Smith, 256 AD2d 732, 733 [1998], lv denied 93 NY2d 929 [1999]).
Next, defendant contends that the surveillance footage of the KFC parking lot should not have been admitted into evidence because it was not properly authenticated. "The decision to admit videotape evidence rests within the sound discretion of the trial court and will not be disturbed absent a lack of foundation for its introduction or a demonstrated abuse of the court's discretion" (People v Carter, 131 AD3d 717, 721 [2015] [internal quotation marks and citations omitted], lv denied 26 NY3d 1007 [2015]). "A videotape may be authenticated by the testimony of a witness to the recorded events or of an operator or installer or maintainer of the equipment that the videotape accurately represents the subject matter depicted" (People v Edmonds, 165 AD3d 1494, 1497 [2018] [internal quotation marks, brackets and citations omitted]; see People v Junior, 119 AD3d 1228, 1231 [2014], lv denied 24 NY3d 1044 [2014]). A discrepancy between the time of the event and the time stamp upon a surveillance recording goes to the weight of the evidence, not its admissibility (see Cicco v Durolek, 171 AD3d 1477, 1477 [2019]; People v Costello, 128 AD3d 848, 848 [2015], lv denied 26 NY3d 927 [2015]).
David Mabus, a general manager of the KFC, provided testimony at trial concerning the surveillance footage. He testified that KFC has a surveillance system consisting of 14 cameras. The data gathered from the surveillance system is stored for 30 days in the general manager's office. The information is recorded digitally and removed via a thumb drive or burned onto a disk. He stated that he was the only employee at the store with access to the place where the surveillance cameras are kept. Mabus testified that the regional manager of KFC made a copy of the surveillance footage at the request of the State Police investigators on April 26, 2016, and he burned a second disk on April 28, 2016, the latter of which was admitted as evidence at trial. He further testified that the two disks were identical, the content was the same as what he watched on the surveillance system at the store on the day of the arrest, and that the video fairly and accurately represented the parking lot of the KFC and the events that were recorded. The record discloses that Mabus, as a maintainer and operator of the surveillance footage, authenticated the tapes by providing testimony that they accurately represented the subject matter depicted and, as such, the surveillance footage was properly admitted into evidence (see People v Patterson, 93 NY2d 80, 84 [1999]; People v Edmonds, 165 AD3d at 1497).
Defendant next asserts that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. Specifically, defendant argues that the evidence at trial did not establish that he had actual or constructive possession of the heroin or that he intended to sell the heroin. With respect to the weight of the evidence, defendant maintains that the only evidence connecting him to the heroin was the unauthenticated surveillance footage.
"When considering a challenge to the legal sufficiency of the evidence, [this Court] view[s] the evidence in the light most favorable to the People and evaluate[s] whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Sostre, 172 AD3d 1623, 1625 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 938 [2019]; see People v Small, 174 AD3d 1130, 1131 [2019], lv denied 34 NY3d 954 [2019]). For a weight of the evidence review, this Court "must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and[, if not,] then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Creech, 165 AD3d 1491, 1492 [2018] [internal quotation marks and citations omitted]; see People v Gill, 168 AD3d 1140, 1140 [2019]). Under this review "we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Vega, 170 AD3d 1266, 1268 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 1074 [2019]; see People v Anatriello, 161 AD3d 1383, 1386 [2018], lv denied 31 NY3d 1144 [2018]).
As relevant here, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses: . . . a narcotic drug with intent to sell it; or . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more" (Penal Law § 220.16 [1], [12]). "'Possess' means to have physical possession or otherwise to exercise dominion or control over tangible property" (Penal Law § 10.00 [8]). When "the People proceed under the theory of constructive possession, the proof must establish that a defendant exercised dominion and control over the property or the person who actually possessed the property" (People v Palin, 158 AD3d 936, 938 [2018] [internal quotation marks, brackets and citation omitted], lv denied 31 NY3d 1016 [2018]; see People v Leduc, 140 AD3d 1305, 1306 [2016], lv denied 28 NY3d 932 [2016]). "A person is guilty of tampering with physical evidence when . . . [b]elieving that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, he [or she] suppresses it by any act of concealment, alteration or destruction, or by employing force, intimidation or deception against any person" (Penal Law § 215.40 [2]).
In addition to the testimony of Mabus and Shive, State Police investigator Scott Pauly testified that Shive had called him during the vehicle stop and told him about defendant's conduct. Pauly stated that his training and experience led him to believe that defendant's behavior was typical of a suspect who is attempting to "get rid of something." As such, he contacted State Police investigator Mark Johnson and asked him to search the KFC parking lot. Pauly testified that while he was driving to KFC, Johnson informed him that he "located that item" in the parking lot. When Pauly arrived at the KFC parking lot, he identified the item as a bag containing what appeared to be heroin. He took photographs of the bag lying on the ground and then secured the bag as evidence. Pauly further testified that he noticed security cameras on the KFC building, and he and Johnson proceeded to speak with management to secure footage from the cameras. He also testified as to the significance of the quantity of heroin discovered, stating that, based on his knowledge and experience, mere drug users usually do not carry that quantity (18 grams) of heroin on them. He testified that each gram of heroin equates to 30 dosage units and, thus, the quantity of heroin that was discovered was approximately 600 dosage units. The street value of that quantity of heroin has a maximum value of $12,000. Lastly, Pauly testified that the evidence log noted that he collected the evidence from the scene and that the next notation in the log was Johnson submitting the evidence into a drop safe. He testified that "[Johnson] failed to document the transfer from [Pauly] to [Johnson]."
Johnson testified that he received a call from Pauly requesting assistance to search the KFC parking lot. He also testified that he pulled into the KFC lot and noticed something on the ground. He then contacted Pauly to inform him that he found something Pauly "might be interested in." He testified that he received the bag of heroin evidence from Pauly and "made a clerical error" by failing to log his receipt of the evidence. Julie Romano, a forensic scientist assigned to the controlled substance section of the State Police, testified that the substance found in the KFC parking lot was 18.712 grams of heroin, which is more than one half of an ounce.
Viewed in a light most favorable to the People, the evidence was legally sufficient to support the element of possession necessary for criminal possession in the third degree. The surveillance footage depicted an item being flung out of defendant's car window while driving through the KFC parking lot. Shortly thereafter, Johnson located the item that was later verified as a bag of heroin. Discarding the item in such manner satisfies the definition of constructive possession (see Penal Law § 10.00 [8]; People v Palin, 158 AD3d at 938). As to the intent to sell, the evidence established that defendant did not possess signs of heroin use. Additionally, Pauly's testimony established that the amount and the street value of the heroin recovered was inconsistent with the profile of a heroin user (see People v Spencer, 169 AD3d 1268, 1270 [2019], lvs denied 34 NY3d 935, 938 [2019]). As to tampering with physical evidence, the surveillance footage established that defendant attempted to conceal and/or destroy evidence by discarding the heroin (see Penal Law § 215.40 [2]). Although a different verdict would not have been unreasonable, as there was no eyewitness to defendant throwing the heroin out the car, and there was a clerical error in the evidence log, we find, when viewing the evidence in a neutral light, that the verdict is not against the weight of the evidence. The surveillance footage was authenticated and confirmed that defendant discarded an item, later identified as 18 grams of heroin, while being followed by Shive.
Defendant contends that County Court erred in denying his CPL article 440 motion as the court failed to give the reasons and conclusion for its determination. The basis for the motion was defendant's claim that his counsel was ineffective for his failure to object to the introduction of identification and testimonial evidence that had previously been precluded in the court's pretrial suppression ruling. Pursuant to CPL 440.30, "[r]egardless of whether a hearing was conducted, the court, upon determining the motion, must set forth on the record its findings of fact, its conclusions of law and the reasons for its determination" (CPL 440.30 [7]; see People v Sheppard, 119 AD3d 986, 988 [2014]). As relevant here, "[t]o prevail on his ineffective assistance of counsel claim on the basis of this single failure to object, defendant must show both that the objection omitted by trial counsel is a winning argument, here one that would have required a mistrial, and that the objection was one that no reasonable defense lawyer, in the context of the trial, could have thought to be not worth raising" (People v Brown, 17 NY3d 742, 743-744 [2011] [internal quotation marks and citation omitted]; see People v Pottorff, 145 AD3d 1095, 1097 [2016], lv denied 30 NY3d 1063 [2017]). Moreover, "a defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's failure to pursue colorable claims" (People v Garcia, 75 NY2d 973, 974 [1990] [internal quotation marks and citation omitted]).
County Court denied defendant's CPL article 440 motion finding defendant was incorrect that the court precluded identification testimony, as the court, in its suppression holding, only precluded statements and admissions made by defendant. As defendant failed to identify any precluded statements or admissions made by him to which counsel failed to object, County Court did not err in failing to address this argument as part of its postjudgment order. As to defendant's claim of ineffective counsel, for the first time he identifies two incidents where counsel did not object — when Shive testified that defendant was verbally tumultuous and Shive's testimony that defendant refused to consent to a search of his vehicle. However, this testimony had no impact on the ultimate verdict because the most significant proof against defendant was the surveillance footage, not his reaction to Shive (see People v Cummings, 16 NY3d at 785). The record establishes that, as a whole, defendant received meaningful representation (see People v Taylor, 156 AD3d 86, 91 [2017], lv denied 30 NY3d 1120 [2018]; People v Wells, 101 AD3d 1250, 1252 [2017], lv denied 20 NY3d 1066 [2013]).
Lastly, defendant argues that his sentence was harsh and excessive. Given defendant's prior drug-related and violent convictions, coupled with his unwillingness to change his behavior, we discern no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence in the interest of justice (see People v Simmons, 122 AD3d 1169, 1169 [2014], lv denied 25 NY3d 1171 [2015]; People v Flower, 173 AD3d 1449, 1458 [2019], lv denied 34 NY3d 931 [2019]). However, defendant correctly asserts that his certificate of conviction and uniform sentence and commitment form should be amended to reflect the current adjudication as a second felony drug offender as opposed to a second felony offender. Thus, the uniform sentence and commitment form and certificate of conviction should be amended accordingly see People v Morton, 173 AD3d 1464, 1466, lv denied 34 NY3d 935 [2019]).
Lynch, J.P., Devine, Aarons and Pritzker, JJ., concur.
ORDERED the judgment and order are affirmed, and matter remitted for entry of an amended uniform sentence and commitment form and an amended certificate of conviction.



Footnotes

Footnote 1: Shive testified that he had been a state trooper for approximately 14 years and that, in his experience performing "thousands" of stops, such a maneuver often indicated that the driver or passenger of the vehicle may be trying to hide or obstruct something from plain view prior to stopping.