People v Spradlin (2020 NY Slip Op 06982)





People v Spradlin


2020 NY Slip Op 06982


Decided on November 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 25, 2020

110872 111254

[*1]The People of the State of New York, Respondent,
v
Benjamin S. Spradlin, Appellant.

Calendar Date: October 16, 2020

Before: Lynch, J.P., Mulvey, Devine, Pritzker and Colangelo, JJ.


Teresa C. Mulliken, Harpersfield, for appellant.
Matthew Van Houten, District Attorney, Ithaca (Emily Perks Quinlan of counsel), for respondent.



Lynch, J.P.
Appeals (1) from a judgment of the County Court of Tompkins County (Miller, J.), rendered April 6, 2018, convicting defendant upon his plea of guilty of the crimes of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, criminal possession of a controlled substance in the third degree (three counts), criminal possession of a controlled substance in the fourth degree and criminal possession of stolen property in the third degree, and (2) by permission, [*2]from an order of said court, entered May 7, 2019, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
In connection with the seizure of contraband by police during a search of defendant's person and vehicle, defendant was charged by indictment with criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, criminal possession of a controlled substance in the third degree (three counts), criminal possession of a controlled substance in the fourth degree and criminal possession of stolen property in the third degree.[FN1] Thereafter, defendant filed an omnibus motion seeking to, among other things, suppress the evidence seized from his person and vehicle as the product of an illegal search. Following a combined Huntley/Dunaway/Mapp hearing, County Court denied defendant's motion, finding that brief detention of defendant prior to his arrest was based on specific, articulable facts and that the search of his person and vehicle was legal.
Defendant pleaded guilty as charged and expressly reserved the right to appeal County Court's denial of his suppression motion.[FN2] He was sentenced, as a second felony offender, to a prison term of five years, followed by five years of postrelease supervision, upon his conviction of criminal possession of a weapon in the second degree and to lesser concurrent prison terms on the remaining convictions.[FN3] Thereafter, defendant moved pursuant to CPL 440.10 to vacate the judgment of conviction, arguing, among other things, that he was deprived of the effective assistance of counsel because his attorney had a conflict of interest. In a May 2019 order, County Court denied the motion without a hearing. Defendant appeals from the judgment of conviction and, by permission of this Court, from the May 2019 order.
With respect to his appeal from the judgment of conviction, defendant contends that County Court erred in denying his motion to suppress the physical evidence seized from his person and vehicle. We disagree. "'In People v De Bour (40 NY2d 210 [1976]), the Court of Appeals set forth a graduated four-level test for evaluating street encounters initiated by the police: level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime'" (People v Sanders, 185 AD3d 1280, 1282 [2020], lv denied ___ NY3d ___ [Oct. 30, 2020], quoting People v Stover, 181 AD3d 1061, 1061-1062 [2020]). "These encounters can be dynamic situations during which the degree of belief possessed at the point of inception may blossom by virtue of responses or other matters which authorize . . . additional action as the scenario unfolds" (People v Tillery, 60 AD3d 1203, 1205 [2009] [internal quotation marks and citations omitted], lv denied 12 NY3d 860 [2009]).
During the suppression hearing, the People elicited testimony from Michael Meskill, a police officer with the City of Ithaca Police Department, and submitted evidence of his body camera recording. Meskill testified that, on August 7, 2016 at approximately 6:15 a.m., he responded to a dispatch call to check on an individual who was reportedly unresponsive in a parked vehicle in a shopping plaza in the City of Ithaca, Tompkins County. Upon responding to that location, Meskill noticed defendant "slumped over to the left" in the driver's seat with the engine running. The body camera footage depicts that the driver's seat was reclined and defendant was lying on his side facing the door with his body appearing to be pressed against it. Meskill knocked on the passenger window to wake defendant, told him to turn the car off and asked if they could speak; defendant agreed. Meskill then walked to the driver's side and asked defendant to exit the vehicle. Defendant did not exit at that time, but freely stated that "he was waiting for his girlfriend to go shopping." Meskill then inquired about when defendant had arrived at the parking lot, to which defendant responded that he had been there since "approximately 2:00 [a.m.]" and that his girlfriend was going to come meet him. Meskill testified, and the body camera footage corroborates, that defendant appeared disoriented and was slurring his speech, which indicated to Meskill that defendant may have been impaired. Meskill asked defendant to produce his license and, when defendant attempted to do so, he "struggled with his wallet," took approximately 45 seconds to produce his license and presented Meskill with an expired vehicle rental agreement. Meskill then asked defendant to give him his key fob, explaining that he did so for safety purposes because he believed that defendant was impaired. Defendant told Meskill that, although he was not the primary driver of the vehicle, he was authorized as a secondary driver and the rental agreement had been extended. During the middle of the encounter, Meskill received a communication from an officer requesting a phone call. At that time, Meskill told defendant not to move in the car, turned his body camera off, walked to the back of the vehicle and made the call. Meskill testified that, while on the phone, he observed defendant "moving about as if he was stuffing something underneath either the floorboard or the seat." He further explained that the officer with whom he spoke informed him that defendant was known to carry a firearm and advised him to use caution.
Meskill then ordered defendant to step out of the vehicle. Meskill testified that, as defendant exited, he observed a chrome stem on the floorboard of the vehicle alongside the driver's seat, believing it to be a crack pipe given his training and experience with narcotics. Defendant then closed the door and Meskill opened it back up, asking defendant to identify the object. According to Meskill, defendant moved toward the door again, prompting Meskill to "set him up against the car" and to place him in handcuffs. Meskill then retrieved the chrome stem, as well as a "Kung Fu star" (see Penal Law § 265.00 [15-b]) that was in plain view on the driver's seat. He thereafter initiated a search of defendant's person, finding a taser, a pocketknife, a tin containing narcotics, and a bag containing pills, a chalky white substance and a brown substance. Meskill also did a preliminary search of the vehicle, finding, among other things, savings bonds located underneath the driver's side door mat that were not issued in defendant's name. Following the vehicle's impoundment, an investigator sought and obtained a warrant authorizing a search of the vehicle. During the execution of that warrant, investigators located, among other things, a loaded handgun. They then obtained a second warrant authorizing the seizure of the gun.
Deferring to County Court's credibility determinations (see People v Tillery, 60 AD3d at 1205), we find that the search of defendant's person and vehicle was proper. With respect to the initial encounter, unlike a stop of a moving vehicle — which must be based upon reasonable suspicion of criminal activity (see People v Ocasio, 85 NY2d 982, 984 [1995]) or probable cause to believe that a traffic violation has occurred (see People v Hinshaw, 35 NY3d 427, 434 [2020]) — "[a] police approach to an occupied, stationary vehicle is subject to the first level of the De Bour analysis" and is justified if "supported by an objective, credible reason, not necessarily indicative of criminality" (People v Stover, 181 AD3d at 1062 [internal quotation marks and citations omitted]; see People v Stevenson, 149 AD3d 1271, 1272 [2017], lv denied 29 NY3d 1134 [2017]). There is no dispute here that Meskill was authorized to approach defendant's vehicle in response to a citizen-requested welfare check upon observing him slumped over with the engine running. Instead, defendant contends that he was unlawfully seized without reasonable suspicion when Meskill ordered him out of the vehicle immediately upon waking him and thereafter asked for his key fob. Although Meskill was permitted to ask for defendant's driver's license and to inquire about his reason for being at the shopping plaza during the initial level-one approach (see People v Hollman, 79 NY2d 181, 190-191 [1992]; People v Grays, 179 AD3d 1149, 1151 [2020]; People v Karagoz, 143 AD3d 912, 914 [2016]; People v Thomas, 19 AD3d 32, 41 [2005], lv denied 5 NY3d 795 [2005]), he was not authorized to order defendant out of the vehicle immediately upon waking him (see People v Eugenio, 185 AD3d 1050, 1051 [2020]). Nevertheless, no seizure occurred at that time, as defendant did not comply with Meskill's request to exit and freely continued the conversation (compare id.).
Thereafter, Meskill noticed that defendant had difficulty retrieving his license, appeared disoriented and was slurring his speech. Defendant also gave a suspicious explanation that he had been waiting for his girlfriend in the parking lot of a grocery store since 2:00 a.m. to go shopping and produced an expired rental agreement for the vehicle. Contrary to defendant's contention, this evidence, combined with the fact that the vehicle's ignition was running when Meskill first approached, gave Meskill reasonable suspicion to believe that defendant may have committed the crime of driving while intoxicated by alcohol or the crime of driving while impaired by a drug (see People v Boler, 106 [*3]AD3d 1119, 1122 [2013]; People v Brand, 74 AD3d 1790, 1791 [2010], lv denied 15 NY3d 849 [2010]; People v Blajeski, 125 AD2d 582, 583 [1986], lv denied 69 NY2d 877 [1987]), thereby justifying the seizure of defendant's key fob. Upon learning that defendant was known to carry a weapon and observing him stuff objects into the floorboard of the driver's seat, Meskill had reasonable suspicion to believe that defendant had committed a crime or that his safety was at risk, authorizing him to order defendant out of the vehicle at that time (see People v Thomas, 275 AD2d 276, 278-279 [2000], lv denied 95 NY2d 939 [2000]; see generally Pennsylvania v Mimms, 434 US 106, 111 [1977]; People v Carvey, 89 NY2d 707, 710 [1997]; People v McLaurin, 70 NY2d 779, 781-782 [1987]; People v Atwood, 105 AD2d 1055, 1055 [1984]).
After observing the chrome stem and Kung Fu star in plain view, Meskill had probable cause to arrest defendant and to search his person incident thereto (see People v Smith, 59 NY2d 454, 458 [1983]; People v Cruz, 131 AD3d 724, 726 [2015], lv denied 26 NY3d 1087 [2015]; People v Ruppert, 42 AD3d 817, 818 [2007], lv denied 9 NY3d 964 [2007]). Moreover, because Meskill had probable cause to believe that evidence would be found in defendant's vehicle and a nexus existed between the probable cause and defendant's arrest, he was justified in conducting the initial on-scene search of defendant's vehicle under the automobile exception to the warrant requirement (see People v Galak, 81 NY2d 463, 467 [1993]; People v Hines, 172 AD3d 1649, 1651 [2019], lv denied 34 NY3d 951 [2019]; People v Johnson, 159 AD3d 1382, 1383 [2018], lv denied 31 NY3d 1083 [2018]). Finally, upon obtaining a warrant based upon probable cause, police lawfully searched the vehicle after it had been impounded and, upon obtaining a second warrant, lawfully seized the gun. Thus, defendant's motion to suppress the evidence was properly denied.
We reject defendant's contention that County Court erred in denying his CPL 440.10 motion to vacate the judgment of conviction. "[T]he purpose of a CPL article 440 motion is to inform a court of facts not reflected in the record and unknown at the time of the judgment. By its very nature, the procedure cannot be used as a vehicle for an additional appeal" (People v Saunders, 301 AD2d 869, 870 [2003] [internal quotation marks, ellipsis and citations omitted], lv denied 100 NY2d 542 [2003]; see People v Taylor, 156 AD3d 86, 89 [2017], lv denied 30 NY3d 1120 [2018]). Such a motion must be denied when "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground[s] or issue[s] raised upon the motion to permit adequate review thereof upon such an appeal" (CPL 440.10 [2] [b]; see People v Grays, 162 AD3d 1224, 1228 [2018], lv denied 32 NY3d 1111 [2018]). "Upon consideration of the merits of the motion, the motion court 'may deny it without conducting a hearing if
. . . [t]he moving papers do not allege any ground constituting legal basis for the motion'" (People v Jones, 24 NY3d 623, 634-635 [2014], quoting CPL 440.30 [4] [a]). "[W]hether a defendant is entitled to a hearing on a CPL 440.10 motion is a discretionary determination . . . that is subject to [appellate] review for an abuse of discretion" (People v Jones, 24 NY3d at 635).
Here, the majority of the claims that defendant raises in the context of the appeal from the denial of his CPL 440.10 motion — including the alleged deficiencies of the grand jury proceedings, the [*4]sufficiency and competency of the evidence thereat, Meskill's purported violation of his department's body camera use policy and the alleged violation of defendant's statutory speedy trial rights — are based on facts that were either apparent from the face of the record to permit adequate review upon direct appeal (see CPL 440.10 [2] [b]) or "could[,] with due diligence by . . . defendant[,] have readily been made to appear on the record in a manner providing [an] adequate basis for review . . . [but which] defendant unjustifiably failed to adduce . . . prior to sentence" (CPL 440.10 [3] [a]; see People v Berezansky, 229 AD2d 768, 771 [1996], lv denied 89 NY2d 919 [1996]). Accordingly, County Court did not err in denying defendant's CPL article 440 motion with respect to such claims. Defendant's argument that his trial counsel rendered ineffective assistance because he had a conflict of interest — although premised upon factual allegations not reflected on the face of the record — is based solely on defendant's own conclusory affidavit and is otherwise unsubstantiated (see CPL 440.30 [4] [d]; see also People v Wright, 27 NY3d 516, 521 [2016]; People v Brandon, 133 AD3d 901, 904 [2015], lvs denied 27 NY3d 992, 1000 [2016]; People v Woodard, 23 AD3d 771, 772 [2005], lv denied 6 NY3d 782 [2006]). Under these circumstances, County Court did not abuse its discretion in denying defendant's CPL 440.10 motion without a hearing.
Defendant's remaining contentions, to the extent not specifically addressed herein, have been considered and found lacking in merit.
Mulvey, Devine, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment and order are affirmed.



Footnotes

Footnote 1: The charges were originally set forth in an October 2016 indictment. County Court granted defendant's motion to dismiss counts 1 and 2 of the October 2016 indictment on the ground that the evidence before the grand jury on those counts was legally insufficient. However, the court granted the People leave to re-present the dismissed counts pursuant to CPL 210.20 (4), resulting in an August 2017 indictment charging him with the same crimes. The 2016 and 2017 indictments were consolidated.

Footnote 2: Defendant later moved to withdraw the plea and County Court denied his request, finding that it was entered into knowingly, voluntarily and intelligently.

Footnote 3: Defendant was also sentenced to a concurrent prison term of eight years with five years of postrelease supervision upon a plea of guilty to robbery in the first degree, which had been charged in a separate indictment.