*809 On July 19, 2007, at approximately 2:15 p.m., a caller telephoned the 911 emergency telephone number and told the operator that he had just come out of a building on Newtown Avenue and 31st Street in Astoria, and that he had seen four “big bully white guys” getting into a brand new black Mustang. The caller recited the Mustang’s license plate number, and further stated that he had seen one of the men put a “big gun” in the back of the Mustang, that there was a gray van traveling with the Mustang either in front of or behind it, and that the two vehicles had made a right turn on 28th Street toward Astoria Boulevard. Police Officer Kashim Valles, patrolling alone in a marked car, received a radio transmission concerning the 911 call, reporting white males with guns, and providing a description of the Mustang and its license plate number. Shortly thereafter, Officer Valles spotted the Mustang turning onto 31st Street. After confirming that the Mustang’s license plate number matched the number in the transmission, Officer Valles, with his lights and sirens on, cut off the Mustang by pulling in front of it. Officer Valles made a radio call announcing that he had stopped the Mustang and requesting backup. Officer Valles then stepped out of his vehicle, drew his gun, and waited for additional officers to arrive.
Once other units arrived, Officer Valles bolstered his gun and approached the front passenger side of the Mustang. The other officers had their guns drawn. Officer Valles asked the passenger to step out of the Mustang, and the passenger complied. As the passenger exited the Mustang with his hands raised, Officer Valles immediately observed a revolver in the front of the passenger’s waistband. Officer Valles confiscated the firearm and handcuffed the passenger. Officer Valles then removed the driver from the Mustang, and placed him in handcuffs. Next, the passengers in the back seat of the Mustang, including the defendant, Costandino Argyris, exited the Mustang and were patted down. The defendant was wearing a bullet-proof vest and had a blackjack in his pocket. A subsequent search of the Mustang resulted in the recovery of a loaded .38 caliber automatic firearm from under the driver’s seat, and a box of 9-millimeter ammunition located on the back seat.
*810 Prior to trial, the defendant moved, inter alia, to suppress the physical evidence recovered by the police. After originally granting that branch of the defendant’s motion, the Supreme Court, in an order dated June 18, 2010, granted the People’s motion for leave to reargue and, upon reargument, vacated its prior determination and thereupon denied suppression. The Supreme Court subsequently denied the defendant’s motion for leave to reargue. The defendant thereafter pleaded guilty to several counts charged in the indictment. The defendant appeals from the judgment of conviction, and we affirm.
We note that “[t]he ‘Aguilar-SpinellV test, as framed in People v Elwell . . . need not be satisfied where [as here] the necessary predicate for justifying the police action under review is the less demanding standard of reasonable suspicion” (People v Legette, 244 AD2d 505, 507 [1997]; see People v Chase, 85 NY2d 493, 501-502 [1995]; People v Colucci, 268 AD2d 531 [2000]; People v Jones, 230 AD2d 752, 753 [1996]; People v Batash, 163 AD2d 399 [1990]; see also Adams v Williams, 407 US 143, 146-147 [1972]; but see People v Herold, 282 AD2d 1, 4-5 [2001]; People v Phillips, 225 AD2d 1043, 1044 [1996]; People v Letts, 180 AD2d 931, 933 [1992]). Officer Valles had reasonable suspicion that the defendant may have committed the crimes of criminal possession of a weapon in the second degree and criminal possession of a weapon in the fourth degree and, thus, reasonable suspicion to stop the Mustang in which the defendant was a passenger, based on the description of the vehicle and its license plate number that was transmitted over the police radio, and the observation of the Mustang in close geographical and temporal proximity to the scene where the defendant was first observed (see People v Allen, 78 AD3d 1521 [2010]; People v Jogie, 51 AD3d 1038, 1039 [2008]; People v Coleman, 5 AD3d 956, 959 [2004]; People v Devorce, 293 AD2d 550 [2002]; People v Maye, 206 AD2d 755, 757 [1994]; People v Mills, 198 AD2d 236, 237 [1993]). Contrary to the defendant’s contention, the report of the 911 caller, which was “ ‘based on the contemporaneous observation of conduct that was not concealed,’ ” was sufficiently corroborated to provide reasonable suspicion for the stop (People v Moss, 89 AD3d 1526, 1527 [2011], quoting People v Jeffery, 2 AD3d 1271, 1272 [2003]). Moreover, the actions of the police in drawing their guns and ordering the defendant and his companions out of the Mustang were justified under the circumstances as appropriate measures to ensure their safety (see People v Brnja, 50 NY2d 366 [1980]; People v Bedoya, 190 AD2d 812 [1993]; People v Finlayson, 76 AD2d 670 [1980], cert denied 450 US 931 [1981]).
Accordingly, the Supreme Court, upon reargument, properly *811 vacated its prior determination granting that branch of the defendant’s omnibus motion which was to suppress physical evidence, and thereupon denied that branch of the defendant’s motion. Skelos, J.E, Leventhal, Belen and Roman, JJ., concur.