People v Costan (2021 NY Slip Op 04760)





People v Costan


2021 NY Slip Op 04760


Decided on August 25, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 25, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
MARK C. DILLON
ROBERT J. MILLER
ANGELA G. IANNACCI, JJ.


2014-03273
 (Ind. No. 10104/12)

[*1]The People of the State of New York, respondent,
v
Robert Costan, appellant.


Patricia Pazner, New York, NY (Kathleen Whooley and Dina Zloczower of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Sholom J. Twersky, and Sullivan & Cromwell LLP [Drew J. Beesley], of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Dineen Riviezzo, J.), rendered March 25, 2014, convicting him of robbery in the first degree (nine counts), attempted robbery in the first degree, robbery in the third degree, attempted robbery in the third degree, and criminal possession of a forged instrument in the third degree (two counts), upon a jury verdict, and sentencing him to (1) concurrent determinate terms of imprisonment of 12 years under counts 1 and 5 (robbery in the first degree), to be followed by a period of postrelease supervision of 5 years, (2) an indeterminate term of imprisonment of 2 to 4 years under count 10 (robbery in the third degree), to run concurrently with the sentences imposed under counts 1 and 5 and consecutively with concurrent determinate terms of imprisonment of 12 years under counts 24, 28, and 32 (robbery in the first degree), to be followed by a period of postrelease supervision of 5 years, (3) an indeterminate term of imprisonment of 2 to 4 years under count 13 (attempted robbery in the first degree), to run concurrently with a determinate term of imprisonment of 12 years under count 15 (robbery in the first degree), with both sentences to run consecutively to a determinate term of imprisonment of 12 years under count 19 (robbery in the first degree), to be followed by a period of postrelease supervision of 5 years, and to an indeterminate term of imprisonment of 2 to 4 years under count 23 (attempted robbery in the third degree), to run concurrently with each other and consecutively to the determinate terms of imprisonment of 12 years imposed under counts 1, 5, 24, 28, 32 (robbery in the first degree), and 10 (robbery in the third degree), (4) determinate terms of imprisonment of 10 years under counts 36 and 40 (robbery in the first degree), to be followed by a period of postrelease supervision of 5 years, to run consecutively to each other and to all other counts, and (5) determinate terms of imprisonment of 1 year under counts 44 and 45 (criminal possession of a forged instrument in the third degree), to run concurrently with each other and to all other counts. The appeal brings up for review the denial, after a hearing (William Harrington, J.), of those branches of the defendant's omnibus motion which were to suppress certain statements he made to law enforcement officials, identification testimony, and physical evidence seized incident to his arrest. By decision and order dated February 13, 2019, this Court remitted the matter to the Supreme Court, Kings County, to hear and report on those branches of the defendant's omnibus motion which were to suppress certain statements he made to law enforcement officials, identification testimony, and physical evidence seized incident to his arrest allegedly in violation of [*2]Payton v New York (445 US 573), and held the appeal in abeyance in the interim (People v Costan, 169 AD3d 820). The Supreme Court, Kings County (Miriam Cyrulnik, J.), has now filed its report. Justice Rivera has been substituted for former Justice Balkin (see 22 NYCRR 1250.1[b]).
ORDERED that the judgment is modified, on the law and as a matter of discretion in the interest of justice, (1) by reducing the conviction of robbery in the first degree under count 28 of the indictment to robbery in the third degree and vacating the sentence imposed thereon, (2) by vacating the convictions of criminal possession of a forged instrument in the third degree under counts 44 and 45 of the indictment, vacating the sentences imposed thereon, and dismissing those counts of the indictment, and (3) by providing that the sentences imposed on the convictions of robbery in the first degree under counts 1 and 24 of the indictment shall run consecutively to each other, and that the sentences imposed on the convictions of robbery in the first degree under counts 5, 15, 19, 32, 36, and 40, robbery in the third degree under count 10, attempted robbery in the first degree under count 13, and attempted robbery in the third degree under count 23 shall run concurrently with each other and with the sentence imposed on the conviction of robbery in the first degree under count 1, for a total term of imprisonment of 24 years; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for sentencing on the conviction of robbery in the third degree under count 28 of the indictment.
During a two-month period in the fall of 2012, the defendant allegedly committed a series of more than one dozen gunpoint robberies at commercial establishments in Brooklyn ranging from dry cleaning stores to delicatessens. On November 21, 2012, an anonymous tip was made to Crime Stoppers naming the defendant as the perpetrator of the robberies. On November 22, 2012, a complaining witness, who worked at an establishment that had been robbed three times, identified the defendant from a photo array as the perpetrator. The police, with the help of the defendant's former girlfriend, obtained the defendant's cell phone number and, by a November 23, 2012 order, received court authorization to track the location of the phone. On the same day, the police pinpointed the defendant's location at the Linden Motor Inn in Brooklyn. Upon confirming with a motel attendant that the defendant was a guest at the Linden Motor Inn and reviewing video surveillance provided by the attendant, the police identified the room in which they believed they could locate the defendant. When a team of police officers arrived at the room and identified themselves as police, one officer knocked on the door and a male voice from inside the room stated that he would open the door and that he did not have a gun. The defendant then opened the door and was handcuffed and placed under arrest. He denied having any weapons and stated that he had thrown his gun in a sewer. A pat down of the defendant resulted in the recovery of the cell phone and a wallet containing several forms of identification from different states, debit cards, and bank checks. Thereafter, the defendant was transported to the Brooklyn Robbery Squad at the 77th Precinct station house. He was initially placed in a holding cell and then moved to an interview room, where Miranda warnings were read to him (Miranda v Arizona, 384 US 436). After signing the Miranda form and confirming his understanding, the defendant waived his Miranda rights and agreed to answer questions without legal representation. The defendant made an oral statement in which he denied involvement in the robberies. After being shown still photographs of video surveillance footage from some of the robbery locations, the defendant admitted to committing several of the robberies. He then agreed to write a statement in the presence of a detective, which he completed before being returned to a holding cell. Thereafter, the defendant was identified from a lineup by four complainants as the person who committed robberies at their commercial establishments.
The defendant moved, inter alia, to suppress physical and identification evidence and his statements made to law enforcement officials and argued that his arrest inside the motel room without a warrant supported by probable cause deprived him of his Fourth Amendment rights. On the scheduled date of the suppression hearing, the Supreme Court denied the defendant's request for an adjournment of the hearing to give his attorney more time to prepare. At the court's urging, counsel agreed to represent the defendant at the suppression hearing, but expressed his concern that he had not had an adequate opportunity to review the discovery materials. While the court suppressed the defendant's pre-Miranda statement in the motel room that he had thrown his gun into a sewer, it denied the rest of the defendant's suppression motion. The defendant was ultimately [*3]convicted, after a jury trial, inter alia, of robbery in the first degree (nine counts). On appeal, the defendant, among other things, argued that he was deprived of the effective assistance of counsel at the suppression hearing. This Court remitted the matter to the Supreme Court, Kings County, for a new suppression hearing and to file its report with this Court thereafter (People v Costan, 169 AD3d 820). The appeal was held in abeyance in the interim (see id.). After a new hearing, the Supreme Court issued a report which included findings of fact and conclusions of law in support of its determination denying suppression except as to the defendant's pre-Miranda statement in the motel room that he had disposed of his gun in a sewer. After the Supreme Court's report was filed, both parties provided supplemental briefing to this Court.
"'[O]n a motion to suppress inculpatory statements, the defendant bears the burden of persuasion, but the People must first establish the legality of the police conduct and the defendant's waiver' of his or her Miranda rights" (People v Fuentes, 185 AD3d 960, 961, quoting People v Kemp, 131 AD2d 265, 267).
"On a motion by a defendant to suppress physical evidence, 'the People have the burden of going forward to show the legality of the police conduct in the first instance'" (People v Benbow, 193 AD3d 869, 871, quoting People v Whitehurst, 25 NY2d 389, 391). "The defendant, however, 'bears the ultimate burden of proving, by a preponderance of the credible evidence, that the evidence should not be used against him'" (People v Dunbar, 188 AD3d 1247, 1248, quoting People v Thomas, 291 AD2d 462, 463). The factual findings and credibility determinations of the hearing court are entitled to great deference on appeal and will not be disturbed unless clearly unsupported by the record (see People v Dunbar, 188 AD3d at 1248).
Here, contrary to the defendant's contention, the police were not required to secure a warrant in order to obtain the defendant's real-time Cell Site Location Information (hereinafter CSLI). The 2018 determination of the United States Supreme Court in Carpenter v United States (___ US ___, 138 S Ct 2206), requiring law enforcement, in the absence of exigent circumstances, to obtain a warrant supported by probable cause before acquiring a person's historical CSLI, specifically does not encompass the acquisition of real-time CSLI at issue here. However, even if Carpenter were to be applied here, the November 23, 2012 order containing an "express finding of probable cause, which was supported by the People's evidentiary showing" (People v Grant, 185 AD3d 608, 609), was effectively a warrant for Carpenter purposes (see People v Clark, 171 AD3d 942, 943). Thus, the Supreme Court properly determined that suppression was not warranted on the basis that the CSLI was illegally obtained.
Pursuant to Payton v New York (445 US 573), the warrantless and nonconsensual entry by police into a defendant's home in order to make a routine felony arrest precludes the introduction of evidence obtained as a result of such entry and arrest (see People v Garvin, 30 NY3d 174, 180; People v Kozlowski, 69 NY2d 761, 762). The Payton rule applies to hotels/motels (see People v Ali, 131 AD2d 857, affd 71 NY2d 1010). Nonetheless, "the Fourth Amendment is not violated every time police enter a private premises without a warrant" (People v Molnar, 98 NY2d 328, 331). "Indeed, provided that there is probable cause, the police may proceed without a warrant to effectuate an arrest within a home if exigent circumstances exist to justify a warrantless entry" (People v McBride, 14 NY3d 440, 445). In determining whether exigent circumstances are present, both federal and state courts consider a number of factors, including "'(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry'" (id. at 446, quoting United States v Martinez-Gonzalez, 686 F2d 93, 100 [2d Cir]). Under the circumstances of this case, the Supreme Court properly determined that there was no Payton violation as exigent circumstances justified the warrantless entry into the defendant's motel room.
The Supreme Court also properly denied that branch of the defendant's omnibus motion which was to suppress the statement that the defendant made when the police knocked on [*4]the motel room door. That statement was precustodial, spontaneous, and "not the result of any police conduct or questioning which reasonably could have been expected to elicit an inculpatory response from him" (People v Burbridge, 194 AD3d 831, 833). Regarding the oral and videotaped statements made by the defendant at the Brooklyn Robbery Squad after the police administered Miranda warnings to him, the suppression hearing evidence established that the defendant knowingly and voluntarily waived his Miranda rights (see People v Shane, 187 AD3d 1219). The defendant's contention that an undue delay in his arraignment warranted suppression of his videotaped statement is without merit. There was no evidence presented at the hearing that any purported delay was "'for the purpose of depriving the defendant of the right to counsel and obtaining an involuntary confession, and that this delay was strategically designed so that an accused could be questioned outside the presence of counsel'" (People v Blount, 176 AD3d 1092, 1094, quoting People v Solorzano, 94 AD3d 1153, 1154).
The Supreme Court also properly denied that branch of the defendant's omnibus motion which was to suppress the lineup identification evidence. "'[U]nduly suggestive pretrial identification procedures violate due process and therefore are not admissible to determine the guilt or innocence of an accused'" (People v Busano, 141 AD3d 538, 539, quoting People v Chipp, 75 NY2d 327, 335). The People have the initial burden of going forward to establish the reasonableness of the police conduct and the lack of undue suggestiveness (see People v Chipp, 75 NY2d at 335; People v Busano, 141 AD3d at 539). If the People meet this burden, the burden then shifts to the defendant to "persuade the hearing court that the procedure was improper" (People v Holley, 26 NY3d 514, 521). Contrary to the defendant's contentions, the hearing evidence established that the lineup fillers were reasonably similar in appearance to the defendant and that the police took reasonable steps to conceal any differences. Specifically, the lineup photographs demonstrated that all the participants were seated, wearing white T-shirts and dark-colored pants and displaying their position numbers in front of them. In addition, on their heads they were wearing similar dark-colored baseball caps with orange brims (see People v Bell, 188 AD3d 904, 905-906; People v Hodges, 155 AD3d 767, 767-768). Any disparities between the defendant and the fillers "were not so apparent as to 'orient the viewer toward the defendant as [the] perpetrator of the crimes charged'" (People v Dorcil, 194 AD3d 1069, 1070, quoting People v Jordan, 44 AD3d 875, 876). There is no requirement that the fillers and the defendant be nearly identical in appearance (see People v Thomas, 187 AD3d 949, 950; People v DeJesus, 140 AD3d 788, 789).
Viewing the evidence at trial in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally insufficient to establish the defendant's guilt beyond a reasonable doubt of robbery in the first degree pursuant to Penal Law § 160.15(4) under count 28 of the indictment. "'A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, shotgun, machine gun or other firearm'" (People v Gamble, 189 AD3d 1069, 1069, quoting Penal Law § 160.15[4]). "To sustain a conviction for robbery in the first degree (Penal Law § 160.15[4]), '[t]he People must show that the defendant consciously displayed something that could reasonably be perceived as a firearm, with the intent of forcibly taking property, and that the victim actually perceived the display'" (People v Smith, 29 NY3d 91, 97, quoting People v Lopez, 73 NY2d 214, 220). "[I]t is the 'display' of what appears to be a firearm, and not the mere threat to use one, which is required" (People v Lopez, 73 NY2d at 221). "A mere verbal threat is insufficient" as the words must be accompanied by some affirmative action appealing to one or more of the victim's actual senses (People v Smith, 29 NY3d at 97). Here, the witness, whose dry cleaning store had been robbed on an earlier occasion, while testifying that the defendant threatened to use the "gun again," denied seeing him make any motions with his hands. Thus, the People failed to adduce legally sufficient evidence that the defendant displayed what appeared to be a gun and that the victim perceived such display. Nevertheless, given that the defendant verbally threatened the use of force in the course of committing larceny (see Penal Law §§ 160.00, 160.05), the conviction of robbery in the first degree under count 28 of the indictment is reduced to robbery in the third degree (Penal Law § 160.05), and we remit the matter to the Supreme Court, Kings County, for the defendant to be sentenced on that count.
The People correctly concede that the defendant's conviction of criminal possession of a forged instrument in the third degree under counts 44 and 45 of the indictment must be vacated. The defendant's wallet was improperly searched at the time of arrest (see People v Geddes-Kelly, 163 AD3d 716, 717), rather than later as part of a "stationhouse inspection of an arrestee's personal effects" (People v Lawrence, 180 AD3d 1070, 1071).
Finally, based upon our review of the relevant circumstances presented in this case, we exercise our discretion in the interest of justice and reduce the sentences to the extent indicated herein (see People v Suitte, 90 AD2d 80).
RIVERA, J.P., DILLON, MILLER and IANNACCI, JJ., concur.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court