People v David

2026 NY Slip Op 01980

April 1, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, appellant,

v

Coria David, respondent.

The People, etc., appellant,

Jose Luis Rivera, respondent.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department

Decided on April 1, 2026

2024-03445, (Ind. No. 70888/23)

Angela G. Iannacci, J.P.

Linda Christopher

Barry E. Warhit

Carl J. Landicino, JJ.

Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, William H. Branigan, Semyon Davydov, and Ronald Eniclerico of counsel), for appellant.

Twyla Carter, New York, NY (Robin Richardson of counsel), for respondent Jose Luis Rivera.

[*1]

DECISION & ORDER

Appeal by the People from an order of the Supreme Court, Queens County (David J. Kirschner, J.), dated March 21, 2024. The order, after a hearing, granted those branches of the defendants' separate omnibus motions which were to suppress physical evidence.

ORDERED that the order is reversed, on the law, and those branches of the defendants' separate omnibus motions which were to suppress physical evidence are denied.

The defendants, Coria David and Jose Luis Rivera, were charged with various offenses, including criminal possession of a weapon in the second degree, after police officers recovered a loaded firearm from a vehicle that David had been driving and in which Rivera was a passenger. Police officers also recovered a firearm and stun gun from a fanny pack worn by Rivera. In separate omnibus motions, the defendants moved, inter alia, to suppress physical evidence as the fruits of an unlawful seizure.

At a suppression hearing, Andy Peralta, a police officer, testified that, on February 15, 2023, at approximately 4:30 p.m., he, along with his partners, received a radio transmission concerning the location of a vehicle that had been involved in a gunpoint robbery earlier that day. The vehicle's location had been identified by a license plate reader. The radio transmission described the vehicle as a black Honda Accord with a Pennsylvania license plate number and directed the officers to 147th Street and Seventh Avenue in Queens. The officers arrived at that location within approximately five minutes and observed a black Honda Accord parked there with its engine running. Peralta did not observe any other black Honda Accords in that vicinity. He testified that the vehicle's windows were excessively tinted and the officers could not see inside the vehicle. The vehicle was boxed in by two police vehicles, and the officers approached the vehicle with their guns drawn.

Body-worn camera video footage of the encounter, which was admitted into evidence at the hearing, depicted the officers approaching the vehicle and a police officer initially instructing the occupants of the vehicle not to move, then repeatedly directing them to get out of the vehicle. Peralta testified that the occupants of the vehicle failed to comply and attempted to drive away, but the vehicle struck a vehicle parked behind it. The police then broke the front driver's and passenger's windows of the vehicle.

The body-worn camera video showed the police opening the driver's side door, removing David from the driver's seat, and laying him face down on the ground. A police officer then reopened the driver's side door and directed Rivera, who was still seated in the passenger seat, to get out of the vehicle, while another officer simultaneously removed Rivera from the vehicle. The driver's side door remained open thereafter, and an officer observed in plain view a firearm in the driver's side door compartment and announced its discovery to his fellow officers. The body-worn camera video reflected that, after the police discovered the firearm in the vehicle, an officer placed a white fanny pack on top of the vehicle. Peralta testified that the police had cut the fanny pack from Rivera's chest to remove it and that a firearm and a "taser" were recovered from the fanny pack.

After the hearing, in an order dated March 21, 2024, the Supreme Court granted those branches of the defendants' separate omnibus motions which were to suppress physical evidence, determining, among other things, that the police officers unlawfully "detain[ed] and seiz[ed] [the defendants] before ever observing any firearms." The People appeal.

As an initial matter, the People contend that the defendants lacked standing to challenge the search of the vehicle because it was stolen (see People v Strunkey, 202 AD2d 610, 611). However, the issue of whether the defendants had standing to challenge the search of the vehicle's interior has no bearing on the defendants' right to contest their detention and arrests as an unreasonable seizure of their persons and to seek suppression of the evidence recovered as the fruits of an allegedly illegal arrest (see People v May, 81 NY2d 725, 727; People v Millan, 69 NY2d 514, 520-521, 520 n 6; People v Voner, 74 AD3d 1371, 1373; People v Gittens, 110 AD2d 908). Further, the defendants had standing to challenge the recovery of the firearm from the vehicle, as the People do not dispute that the charges related to that firearm were based solely on the statutory presumption (see Penal Law § 265.15; People v Millan, 69 NY2d at 519-520; People v Rivera, 127 AD3d 595, 596), and the record reveals no other basis for attributing possession of that weapon to the defendants (cf. People v Cheatham, 54 AD3d 297, 300).

Turning to the merits, contrary to the Supreme Court's determination, the People met their burden of establishing the legality of the police conduct. "On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Hernandez, 40 AD3d 777, 778; see People v Dubuisson, 206 AD3d 757, 758). "The defendant, however, bears the ultimate burden of proving, by a preponderance of the credible evidence, that the evidence should not be used against him [or her]" (People v Knight, 205 AD3d 928, 929 [internal quotation marks omitted]; see People v Berrios, 28 NY2d 361, 367).

In People v De Bour (40 NY2d 210), the Court of Appeals established a graduated four-level test for evaluating street encounters initiated by the police (see People v Moore, 6 NY3d 496, 498). "[L]evel one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (id. at 498-499; see People v De Bour, 40 NY2d at 223; People v Dubuisson, 206 AD3d at 758). "Reasonable suspicion has been defined as 'that quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand'" (People v Bowers, 148 AD3d 1042, 1043, quoting People v Martinez, 80 NY2d 444, 448).

Here, the police officers had reasonable suspicion to stop the vehicle based upon the fact that the description of the vehicle matched that of a vehicle that had been involved in an armed robbery earlier that day, and the vehicle's location had been detected by a license plate reader approximately five minutes prior to the stop (see People v Daily, 194 AD3d 1068, 1069; People v Torres, 167 AD3d 665, 666). Moreover, the actions of the police officers in drawing their guns and ordering the defendants out of the vehicle were justified under the circumstances as appropriate measures to ensure their safety (see People v Crawford, 110 AD3d 916, 917; People v Argyris, 99 AD3d 808, 810, affd 24 NY3d 1138; People v Bedoya, 190 AD2d 812). Additionally, when the defendants failed to cooperate with the officers' instructions, the officers acted appropriately in breaking the vehicle's "excessive[ly] . . . tint[ed]" front windows for their own safety and then in removing the defendants from the vehicle and placing them in handcuffs (see People v Allen, 73 NY2d 378, 379-380; People v Zubidi, 233 AD3d 55, 63, affd ___ NY3d ___, 2026 NY Slip Op 00964; People v Martinez, 147 AD3d 642, 643; People v Smith, 125 AD3d 897, 898). The police thereafter had probable cause to arrest the defendants once the officer observed a firearm in plain view in the compartment of the driver's side door of the vehicle (see People v Fleming, 65 AD3d 702, 704).

Moreover, the subsequent search of Rivera's fanny pack was justified as a search incident to a lawful arrest (see People v Smith, 59 NY2d 454). Contrary to Rivera's contention, the People sufficiently demonstrated that the police discovered the firearm in the vehicle before finding the weapons in Rivera's fanny pack. The body-worn camera video demonstrates that an officer observed, and immediately announced to all of the officers at the scene, the discovery of the firearm in the vehicle's driver side door before the search of Rivera's fanny pack, which Rivera acknowledges occurred "[a]fter the fanny pack was cut from his body." Rivera's acknowledgment corroborates what is seen in the body-worn camera video, that is, an officer observes and announces the firearm in the vehicle before Rivera's fanny pack is held up and placed on the vehicle's roof. Contrary to Rivera's contention, Peralta did not testify that the firearm in the fanny pack was found first. Although Peralta made reference to the firearm found in the vehicle as "a second firearm," that was based on the order in which he was questioned about the recovery of the firearms. Peralta was asked about the recovery of the weapons from Rivera's fanny pack first and was later questioned about the firearm found inside the vehicle, which he then referred to as "a second firearm."

Further, contrary to the position of our colleague in the dissent, the People demonstrated the presence of exigent circumstances justifying the search of Rivera's fanny pack. "Under the State Constitution, to justify a warrantless search incident to arrest, the People must satisfy two separate requirements" (People v Jimenez, 22 NY3d 717, 721; see People v Mosquito, 197 AD3d 504, 505). "The first imposes spatial and temporal limitations to ensure that the search is 'not significantly divorced in time or place from the arrest'" (People v Jimenez, 22 NY3d at 721, quoting People v Smith, 59 NY2d at 458). "The second, and equally important, predicate requires the People to demonstrate the presence of exigent circumstances" (id. at 722; see People v Mosquito, 197 AD3d at 505).

The Court of Appeals has identified two interests underlying the exigency requirement, namely, "the safety of the public and the arresting officer; and the protection of evidence from destruction or concealment" (People v Gokey, 60 NY2d 309, 312; see People v Jimenez, 22 NY3d at 722; People v Hernandez, 40 AD3d at 779). "While an officer need not affirmatively testify as to safety concerns to establish exigency, such apprehension must be objectively reasonable" (People v Jimenez, 22 NY3d at 723).

Our dissenting colleague maintains that the People failed to demonstrate exigent circumstances because the police had no reasonable belief that the fanny pack contained a weapon, relying on the fact that the radio transmission did not specify the location of the gunpoint robbery or how much time elapsed since the robbery reportedly occurred and did not include a description of the suspects. We respectfully disagree. The police were notified that a vehicle matching the description of the subject vehicle was involved earlier the same day in a gunpoint robbery in Brooklyn. Additionally, after the vehicle was boxed in by police vehicles, the occupants tried to escape the scene in the vehicle and continually refused the officer's directives to lower the heavily [*2]tinted car windows or exit the vehicle.

Moreover, the Court of Appeals has made clear that the requisite exigency for a warrantless search can be based on the crime for which there is probable cause to arrest, as well as other circumstances suggesting the presence of a weapon (see id. at 722). Here, there was probable cause to arrest Rivera based upon the recovery of a firearm from the vehicle in which the gunpoint robbery suspects reportedly had fled. Further, the fanny pack, which Rivera had been wearing across his chest, had not been reduced to the exclusive control of the police and was clearly of sufficient size to hold a handgun (see People v Smith, 59 NY2d at 459 [upholding the warrantless search of the defendant's briefcase where he was arrested and handcuffed for jumping a turnstile, was seen to be wearing a bullet-proof vest, and the briefcase was of a sufficient size to contain a weapon]; People v Johnson, 226 AD3d 521, 521-522 [search of a bag was justified incident to the defendant's arrest, inter alia, where the bag was located two feet away from the defendant, who was handcuffed, and the defendant had been sought in connection with an earlier gunpoint rape and robbery]; People v Velez, 154 AD3d 527, 528 [search of the handcuffed defendant's wallet was proper where the defendant had been arrested for robbery, "a violent crime," and the police had already recovered one razor blade from the defendant]).

Further, contrary to the dissent's assertion, Peralta's testimony established that cocaine was properly recovered from David as part of a lawful stationhouse inspection of objects on the defendant's person (see People v Perel, 34 NY2d 462, 468; People v Lawrence, 180 AD3d 1070, 1071; People v Goode, 176 AD3d 629, 629).

Rivera's remaining contentions are without merit.

Accordingly, the defendants failed to meet their ultimate burden of establishing that the police conduct was unlawful. Therefore, the Supreme Court should have denied those branches of the defendants' separate omnibus motions which were to suppress physical evidence.

IANNACCI, J.P., WARHIT and LANDICINO, JJ., concur.

CHRISTOPHER, J., concurs in part and dissents in part, and votes to modify the order, on the law, by deleting the provision thereof granting those branches of the defendants' separate omnibus motions which were to suppress physical evidence recovered from the subject vehicle, and substituting therefor a provision denying those branches of the defendants' separate omnibus motions, and, as so modified, to affirm the order, with the following memorandum:

I agree with my colleagues in the majority that the police officers reasonably stopped the defendants, removed the defendants from the vehicle, and placed them in handcuffs for the officers' own safety. Therefore, I agree with my colleagues in the majority that the Supreme Court should have denied those branches of the defendants' separate omnibus motions which were to suppress physical evidence recovered from the subject vehicle. However, I respectfully dissent, in part, because I believe that the warrantless searches of Jose Luis Rivera's fanny pack and the defendants' pockets were not justified. Accordingly, I conclude that the court properly granted those branches of the defendants' separate omnibus motions which were to suppress the physical evidence contained in the fanny pack and the defendants' pockets.

"The exclusionary rule generally bars from trial all 'physical, tangible materials obtained either during or as a direct result of an unlawful invasion'" (People v Millan, 69 NY2d 514, 521, quoting Wong Sun v United States, 371 US 471, 485). "'The exclusionary rule is not aimed at safeguarding the truth-seeking process nor is its underlying purpose to redress any injury to the defendant's privacy. It is a judicially created remedy intended as a means of discouraging police misconduct'" (People v Marcial, 211 AD3d 98, 104, quoting People v Castillo, 80 NY2d 578, 583).

"'All warrantless searches presumptively are unreasonable per se,' and, thus, '[w]here a warrant has not been obtained, it is the People who have the burden of overcoming' this presumption of unreasonableness" (People v Jimenez, 22 NY3d 717, 721, quoting People v Hodge, [*3]44 NY2d 553, 557). Under the United States Constitution, "[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification" (United States v Robinson, 414 US 218, 235). However, the New York Constitution "require[s] that the reasonableness of each search or seizure be determined on the basis of the facts and circumstances of the particular case" (People v Smith, 59 NY2d 454, 457). The propriety of a court's decision to grant or deny a defendant's suppression motion must be determined based upon the evidence before the suppression court (see People v Wellington, 84 AD3d 984, 985; People v Fleming, 65 AD3d 702, 703).

"Under the State Constitution, to justify a warrantless search incident to arrest, the People must satisfy two separate requirements" (People v Jimenez, 22 NY3d at 721). "The first imposes spatial and temporal limitations to ensure that the search is 'not significantly divorced in time or place from the arrest'" (id., quoting People v Smith, 59 NY2d at 458). "The second, and equally important, predicate requires the People to demonstrate the presence of exigent circumstances" (id.; see People v Gokey, 60 NY2d 309, 313). "Exigent circumstances may be established by a showing that the search was necessary to ensure the safety of the public or the arresting officer, or that it was necessary to prevent the destruction or concealment of evidence" (People v Houston, 143 AD3d 737, 739; see People v Jimenez, 22 NY3d at 722). "The crime for which there is probable cause to make the arrest may itself provide the requisite exigency" (People v Jimenez, 22 NY3d at 722). "Exigency may also derive from circumstances other than the nature of the offense" (id.). In either case, "[e]xigency must be affirmatively demonstrated" (id.; see People v Mabry, 37 NY3d 933, 934).

Here, the People failed to demonstrate the presence of exigent circumstances justifying the warrantless search of Rivera's fanny pack (see People v Mabry, 37 NY3d at 934; People v Lewis, 242 AD3d 1116, 1121; People v Houston, 143 AD3d at 739). The body-worn camera video footage of a police lieutenant demonstrates that, at the moment Andy Peralta, a police officer, found the firearm in the driver's side map compartment of the vehicle, another officer was placing the fanny pack on the roof of the vehicle after the fanny pack had been removed from Rivera's person out of view.

The record contains no evidence that the police reasonably believed that the fanny pack contained a weapon at the time it was searched (see People v Jimenez, 22 NY3d at 724; cf. People v Alvarado, 126 AD3d 803, 805). The fact that the police were responding to a report of a gunpoint robbery was inadequate to establish that the police reasonably suspected that Rivera was armed and dangerous at the time of the stop, as Peralta's testimony describing the radio transmission did not specify the location of the reported "gunpoint robbery" except that it was "in a different borough," did not specify how much time had elapsed since the robbery reportedly occurred, and did not include a description of the robbery suspects (cf. People v Mabry, 184 AD3d 867, 869, revd 37 NY3d 933; People v Velez, 154 AD3d 527, 528). Furthermore, Peralta was not aware of any iCard for Rivera's arrest (cf. People v Johnson, 226 AD3d 521, 521).

Inasmuch as the only reason offered for cutting the fanny pack from Rivera's chest area was that the police could not otherwise remove the fanny pack without uncuffing Rivera's hands, the record does not contain evidence supporting a determination that the fanny pack was in Rivera's immediate control or grabbable area (see People v Mabry, 184 AD3d at 874 [Leventhal, J., dissenting]; cf. People v Johnson, 226 AD3d at 521), that the search of the fanny pack was, in effect, simultaneous with the handcuffing of Rivera (cf. People v Smith, 59 NY2d at 459), or that the police had not obtained exclusive control of the fanny pack (cf. People v Boone, 233 AD3d 623, 625). Indeed, the lieutenant's body-worn camera video footage demonstrates that the lieutenant and Peralta, the sole witness at the suppression hearing, were on the driver's side of the vehicle while two or more officers arrested Rivera out of view on the passenger's side of the vehicle.

Finally, Peralta's conclusory testimony that cash and alleged narcotics were removed from the defendants' pockets during the booking process was inadequate to establish that the search of the defendants' pockets was reasonable (see People v Costan, 197 AD3d 716, 723; People v Houston, 143 AD3d at 739). Peralta's testimony did not identify who removed the property from [*4]the defendants' pockets and did not specify whether he personally observed the search or whether the defendants were being held in police custody (cf. People v Perel, 34 NY2d 462, 468).

Accordingly, I believe the Supreme Court properly granted those branches of the defendants' separate omnibus motions which were to suppress the physical evidence that was obtained by an unlawful search of their persons.

ENTER:

Darrell M. Joseph

Clerk of the Court